**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
POWER UP LENDING GROUP LTD

                                          Plaintiff,

        Civil Action No.: 16-cv-1545-DRH

-against-

CARDINAL ENERGY GROUP, INC.,

                                         Defendant.
----------------------------------------------------------X

## <u>DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION SEEKING SUMMARY JUDGEMENT</u>

**THE BASILE LAW FIRM P.C.**
Mark R. Basile, Esq.[MB2201]
400 Jericho Turnpike, Ste. 100
Jericho, New York 11747
Tel: (516) 455-1500
Fax: (631) 498-0748
mark@thebasilelawfirm.com
*Attorneys for Defendant* (*Cardinal Energy Group, Inc.*)

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT ...........................................................................................................2

POINT I
**THIS TRANSACTION IS GOVERNED BY NEW YORK LAW**
**NOTWITHSTANDING THE DOCUMENT'S CHOICE OF LAW**
**CLAUSE THAT CLAIMS VIRGINIA LAW GOVERNS THE TRANSACTION** ......2-3

    A.  The Tests in New York for the Applicability of a Choice
       of Law Clause is the Reasonable Relationship Test and
       the Fundamental Public Policy Test ...............................................
       ................................................................................................3-4

i) The Choice of Law Clause Fails the Reasonable Relationship Test............................4-6

ii) New York's Criminal Usury Statute reflects a Fundamental
   Public Policy that Must be Enforced and Supersede the Parties
   Choice of Law Clause ........................................................................................6-7

POINT II
**THE TRANSACTION BETWEEN THE PARTIES IS**
**SUBJECT TO NEW YORK'S CRIMINAL USURY**
**STATUTE, PENAL LAW 190.40.** ...............................................................................7-17

    A.  The Transaction Between the Parties is a Loan
       subject to New York's Criminal Usury Statute ......................................8-10
    B.  The November 12, 2015 Revenue Based Financing
       Agreement is Not A Merchant Agreement ...............................................10-11

POINT III
**THE EFFECTIVE INTEREST RATE OF THE NOVEMBER 12, 2015 TRANSACTION**
**EXCEEDS 25% AND VIOLATES THE N.Y. CRIMINAL USURY CAP PURSUANT**
**TO PENAL LAW §190.40** .......................................................................................17-18

POINT IV
**THIS TRANSACTION IS VOID,** *ab initio***,**
**PURSUANT TO GEN. OBLIG. LAW §5-511**.............................................................19-23

POINT V
**SUMMARY JUDGMENT IS NOT APPROPRIATE**
**AS THERE ARE TRIABLE ISSUES OF FACT**.......................................................23

**CONCLUSION** .....................................................................................................23-24

# TABLE OF AUTHORITIES

Pages

*Am. Equities Grp., Inc. v. Ahava Dairy Prods. Corp.*,
No. 01-CV-5207, 2004 WL 870260, at *8 (S.D.N.Y. Apr. 23, 2004) .................................4

*Apex Oil Co. v. Di Mauro*,
822 F.2d 246, 253 (2d Cir. 1987) .................................................................................23

*Astoria Fed. Mortg. Corp. v. Pellicane*,
913 N.Y.S.2d 228, 230 (2d Dep't 2010) ......................................................................4

*Band Realty Co. v. N. Brewster, Inc.*,
37 N.Y.2d 460, 373 N.Y.S.2d 97, 335 N.E.2d 316 (1975) ...................................13, 18

*Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*,
2013 NY Slip Op 1483, 105 A.D.3d 178, 961 N.Y.S.2d 86 (App. Div.)...........................13, 17,
19

*Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*,
310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) .....................................................................8

*Brodie v. Schmutz (In re Venture Mort. Fund, L.P.)*,
282 F.3d 185 (2d Cir. 2002) .......................................................................................21, 22

*Culbert v. Rols Capital Co.*,
585 N.Y.S.2d 67, 67 (2d Dept. 1992).........................................................................4, 5

*Endico Potatoes v. CIT Group/Factoring*,
67 F.3d 1063, 1069, 2d Cir. Ct. of App. N.Y. [1995] ...........................................................9

*Freitas v. Geddes Sav. & Loan Assn.*,
63 NY2d 254, 261, 471 N.E.2d 437, 481 N.Y.S.2d 665 [1984] ...................................8, 16

*Gambar Enters. v. Kelly Servs., Inc.*,
418 N.Y.S.2d 818, 822 (4th Dep't 1979) .....................................................................4

*Home Bond Co. v. McChesney*,
239 U.S. 568, 575-576 [1916].....................................................................................9

*Hufnagel v. George*,
135 F. Supp. 2d 406 (S.D.N.Y. 2001) ........................................................................19, 22

*IBIS Capital Grp., LLC v. Four Paws Orlando LLC*,
2017 NY Slip Op 30477(U) (Sup. Ct.).........................................................................17

ii

*In re McCorhill Publ'g Inc.,*
86 B.R. 783, 793 (Bankr. S.D.N.Y. 1988) .......................................................................... 6

*Kelly, Grossman & Flanagan, LLP v Quick Cash, Inc.,*
35 Misc. 3d 1205(A), 1205A [2012] .................................................................................. 15

*Klein v. On Deck Capital,*
17 N.Y.S.3d 383, 2015 WL 3936167, at *3 (Sup. Ct. Westchester Cty. June 24, 2015)...... 4

*K9 Bytes, Inc. v. Arch Capital Funding, LLC,*
2017 NY Slip Op 27166, ¶¶ 5-6, 56 Misc. 3d 807, 816-17, 57 N.Y.S.3d 625, 632-33 (Sup. Ct.).... 8, 12

*Madden v. Midland Funding, LLC,*
(2017 U.S. Dist. LEXIS 27109) ...................................................................................... 3, 6

*Merch. Cash & Capital LLC v. Edgewood Grp., LLC,*
2015 U.S. Dist. LEXIS 94162, 10-12 (S.D.N.Y.) ........................................................... 15, 16

*Merch. Funding Servs., LLC v. Volunteer Pharm., Inc.,*
2016 NYLJ LEXIS 4582 ............................................................................................. 7, 8, 17

*O.P.M. Leasing Services, Inc.,*
30 B.R. 642, 648 (Bankr. S.D.N.Y. 1983) ........................................................................ 9

*Orvis v. Curtiss,*
157 N.Y. 657, 661, 52 N.E. 690, 691 (1899) ..................................................................... 8

*Pearl Capital Rivis Ventures, LLC v RDN Constr., Inc.*
2016 NY Slip Op 26344 *(Sup. Ct. Westchester Co. 2016)*.................................................. 7, 11

*People v. Service Institute, Inc.,*
101 Misc. 2d 549, 550-553 [1979] ................................................................................... 15

*Platinum Rapid Funding Group Ltd., v. VIP Limousine Services, Inc., et al.,*
Supreme Court, Nassau County, Index No.: 604163/2015 .................................................. 15

*Phlo Corp. v. Stevens,*
00 Civ. 3619 (DC), 2001 U.S. Dist. 17490, (S.D.N.Y.)....................................................... 14

*Professional Merchant Advance Capital, LLC v Your Trading Room, LLC,*
2012 NY Slip Op 33785(U) .............................................................................................. 15

*Rapid Capital Fin., LLC v Natures Mkt. Corp.*
2017 NY Slip Op 27340 .................................................................................................. 11

*Retail Capital, LLC v. Spice Intentions Inc.*,
2016 N.Y. Misc. LEXIS 4883, 2017 WL 123374 at *2 (Sup. Ct. Queens Co. Jan. 3, 2017) ........... 12

*Rothstein v. Isolation Film LLC*,
2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017) .................................................................. 19

*Sun Forest Corp. v. Shvili*,
152 F. Supp. 2d 367 (S.D.N.Y. 2001) ................................................................................... 4

*Szerdahelyi v. Harris*,
67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986) ................................................... 19, 21,
22

*Welsbach Elec. Corp.*,
859 N.E.2d at 500 .................................................................................................................. 4

## INTRODUCTION

The defendant, Cardinal Energy Group, Inc's opposition to Plaintiff's summary judgment motion is based upon its properly raised and pleaded affirmative defense of criminal usury pursuant to New York Penal Law §190.40 in its amended answer. (*See* DKT#35, Amended Answer, ¶¶38-46)  There are two core issues that Defendant raises in its opposition to Plaintiff's motion for summary judgment, either of which raises a triable issue of fact requiring the instant motion to be denied. The first issue is whether the choice of law provision in the transaction documents that purports to require the application of Virginia law can withstand the judicial examination under the "reasonable relation" and "fundamental public policy" tests that the courts in this state must apply to determine whether the choice of law provision is valid and enforceable. This will require a fact intensive inquiry by this court. The second core issue defendant raises is whether the underlying transaction between the parties is actually a loan that provides for a criminally usurious rate of interest by charging interest exceeding 25% in violation of the Gen. Oblig. Laws §5-501 and Penal Law §190.40, and thus, the transaction is void *ab initio* as a matter of law pursuant to N.Y. Gen. Oblig. Law §5-511.  Defendant will demonstrate in this brief that POWERUP actively attempts to evade New York's criminal usury laws that the Federal District Courts in New York consider a "fundamental public policy".  POWERUP is attempting to achieve this through the improper use and attempted application of a choice of law provision to apply another state's substantive laws that do not protect corporations from criminal usury as well as by improperly characterizing the transaction as something other than a loan. This brief will demonstrate that the transaction is nothing other than a short term loan subject to New York's usury laws.

## POINT I
## THIS TRANSACTION IS GOVERNED BY NEW YORK LAW NOTWITHSTANDING THE DOCUMENT'S CHOICE OF LAW CLAUSE THAT CLAIMS VIRGINIA LAW GOVERNS THE TRANSACTION.

The basic test in New York to determine if another state's substantive laws should govern a transaction is called the "reasonable relationship test" wherein the court must examine several factors to determine if the parties agreement to a choice of law provision reasonably relates to that jurisdiction. However, while the "reasonable relationship" test is usually the courts first inquiry when a choice of law provision is contested by one of the parties, there exists an overriding factor of whether there is a local state law that reflects a "fundamental public policy" that is so strong, it must be applied over the stated law in a choice of law provision between the parties. In this case, the parties transaction documents claim to be subject to Virginia law. Virginia law does not allow corporations protection against usurious transactions. (See Code of Virginia §6.2-308. (Entities not permitted to plead usury). Virginia Code §6.2-308 reads as follows:

> A. No (i) corporation, (ii) partnership that is required to file a certificate pursuant to Chapter 2.1 (§ 50-73.1 et seq.) of Title 50 or was required to file a certificate pursuant to former Chapter 2 (§ 50-44 et seq.) or Chapter 3 (§ 50-74 et seq.) of Title 50 or that is formed under laws other than those of the Commonwealth, (iii) limited liability company, (iv) business trust, or (v) joint venture organized for the purpose of holding, developing, and managing real estate for profit, shall, by way of defense or otherwise, avail itself of any of the provisions of this chapter or any other statutory or case law relating to usury or compounding of interest to avoid or defeat the payment of any interest or any other sum that it has contracted to pay.

> B. Nothing contained in this chapter or any other statutory or case law relating to usury or compounding of interest shall be construed to prevent the recovery of interest or any other sum that an entity described in subsection A has contracted to pay, regardless of whether it is more than the contract rate of interest and the fact appears on the face of the contract.

However, New York's body of usury laws provide corporations protection from criminally usurious loans. (See G.O.L §5-521(3). G.O.L §5-521(3) reads:

2

§ 5-521. **Corporations prohibited from interposing defense of usury.**
1. No corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed to include all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships.

2. The provisions of subdivision one of this section shall not apply to a corporation, the principal asset of which shall be the ownership of a one or two family dwelling, where it appears either that the said corporation was organized and created, or that the controlling interest therein was acquired, within a period of six months prior to the execution, by said corporation of a bond or note evidencing indebtedness, and a mortgage creating a lien for said indebtedness on the said one or two family dwelling; provided, that as to any such bond, note or mortgage executed by such a corporation and effective prior to April sixth, nineteen hundred fifty-six, the defense of usury may be interposed only in an action or proceeding instituted for the collection, enforcement or foreclosure of such note, bond or mortgage. Any provision of any contract, or any separate written instrument executed prior to, simultaneously with or within sixty days after the delivery of any moneys to any borrower in connection with such indebtedness, whereby the defense of usury is waived or any such corporation is estopped from asserting it, is hereby declared to be contrary to public policy and absolutely void.

3. **The provisions of subdivision one of this section shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law.** (Emphasis added)

The federal courts in this circuit have held that New York's criminal usury law represents an important and fundamental public policy that overrides a choice of law provision. See *Madden v. Midland Funding, LLC,* (2017 U.S. Dist. LEXIS 27109).

### A. The Tests in New York for the Applicability of a Choice of Law Clause is the "Reasonable Relationship" Test and the "Fundamental Public Policy" Test.

The facts of this case demonstrate that the choice of law provision imposing Virginia state law in the transaction documents fail both the "reasonable relationship" test and the "fundamental public policy" test under New York law. The penultimate examination and decision under these tests in context of New York's criminal usury statute was conducted and answered in *Madden v. Midland Funding, LLC,* (2017 U.S. Dist. LEXIS 27109) wherein J.

3

Seibel reviewed the "reasonable relationship" test compared to the parties own set of facts and

determined that the parties lacked the required nexus to impose the choice of law provision

requiring Delaware law to be applied. Judge Seibel further examined the New York criminal

usury law in context to its 142 year history in New York and determined that the criminal usury

law reflected a "fundamental public policy" that required it to be enforced and therefore, applied

New York law to the parties.

### i) The Choice of Law Clause Fails the "Reasonable Relationship" Test.

"Generally, courts will enforce a choice-of-law clause so long as the chosen law bears a

reasonable relationship to the parties or the transaction." *Welsbach Elec. Corp.*, 859 N.E.2d at

500. In addressing that issue, courts have looked to the location of the following factors: the

parties' negotiation of the agreement; performance under the agreement, including where loan

payments were received; the parties' places of incorporation; the parties' principal places of

business; and the property that is the subject of the transaction. *See Am. Equities Grp., Inc. v.*

*Ahava Dairy Prods. Corp.*, No. 01-CV-5207, 2004 WL 870260, at *8 (S.D.N.Y. Apr. 23, 2004);

*Astoria Fed. Mortg. Corp. v. Pellicane*, 913 N.Y.S.2d 228, 230 (2d Dep't 2010); *Gambar Enters.*

*v. Kelly Servs., Inc.*, 418 N.Y.S.2d 818, 822 (4th Dep't 1979); *Klein v. On Deck Capital*, 17

N.Y.S.3d 383, 2015 WL 3936167, at *3 (Sup. Ct. Westchester Cty. June 24, 2015); *Am. Express*

*Bank, FSB v. Dalbis*, No. 300082/10, 2011 WL 873512, at *9-12 (Civ. Ct. Richmond Cty. Mar.

14, 2011); *Am. Express Travel Related Servs. Co. v. Assih*, 893 N.Y.S.2d 438, 445-46 (Civ. Ct.

Richmond Cty. 2009). A party may not evade New York's usury laws, however, by merely

"nominally operating" in another jurisdiction. *Culbert v. Rols Capital Co.*, 585 N.Y.S.2d 67, 67

(2d Dep't 1992). *See also Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367 (S.D.N.Y. 2001). This

4

Court's first analysis, as to where the parties are incorporated, should be simple but is not. Defendant is a Nevada corporation with its headquarters in Texas.  (See *Ford Decl.*¶ 3). Regarding Plaintiff's state of incorporation, the facts are not as clear.  Plaintiff pleads in its complaint that it is incorporated in the State of Virginia. (See Plaintiff's *Complaint*, DKT#1, ¶ 8). According to the docket of several other cases that Plaintiff is either a defendant in or that they have brought in this district, Plaintiff states it is organized under the laws of the State of New York. (See *Ford Decl.* ¶7). This is in direct conflict with Plaintiff's pleading in this matter.  (See *Complaint* DKT#1, ¶ 8). , The undisputed facts are that Plaintiff's headquarters and its entire operation is located in Great Neck, New York.  (See *Ford Decl.* ¶ ¶ *7-8* ). Additionally, this transaction was negotiated in New York (See *Ford Decl.* ¶*9*); all communications regarding this initiation and completion of this transaction were done in New York (See *Ford Decl.* ¶ 9); all documents were generated in New York (*See Ford Decl.* ¶ 9); all payments under the transaction were to be made to, or received by Plaintiff's bank that is located in New York (See *Ford Decl.* ¶10, Ex. 3) and the parties agreed that venue and jurisdiction over the action would be in New York. (See Plaintiff's *Complaint*, DKT#1, at ¶5).  The Defendant has no contacts, nor any relationship with the State of Virginia whatsoever.  Other than a possible incorporation by Plaintiff in Virginia, there are  no other contacts with that state. The documentary evidence attached to Mr. Ford's declaration dated May 31, 2018 clearly demonstrates that the parties choice of law provision, imposing Virginia law, should not be applied because the facts in this case clearly demonstrate that the parties have no reasonable relationship with the State of Virginia under the *Culbert* analysis, and that the attempted use of Virginia's laws was clearly

designed to circumvent the penalties associated with violating New York's criminal usury laws. At a minimum, this creates a triable issue of fact and summary judgment must be denied.

### i) New York's Criminal Usury Statute reflects a Fundamental Public Policy that Must be Enforced and Supersede the Parties Choice of Law Clause.

New York's usury laws constitute a "fundamental public policy." See *In re McCorhill Publ'g Inc.*, 86 B.R. 783, 793 (Bankr. S.D.N.Y. 1988). Although J. Seibel discussed the "reasonable relationship" test in *Madden* that is part of New York's choice-of-law jurisprudence, Judge Seibel rested her decision as to the applicable law on the ground that applying Delaware law, which does not cap interest rates, would  violate a fundamental public policy of New York. See *Madden v. Midland Funding, LLC,* (2017 U.S. Dist. LEXIS 27109). The case before this court is eerily similar in that Virginia law does not allow corporations to raise usury as a defense and the parties herein do not meet the reasonable relationship test to the State of Virginia. However, The *Madden* analysis properly avoided considering the details of any argument about the actual reasonableness of the relationship of the original creditor to Delaware, including the importance of the creditor's principal place of business and any allegation that the creditor was only nominally operating there. Judge Seibel cited numerous cases holding New York's usury statutes to represent a fundamental public policy of the State. (See *Madden, id.*) Judge Seibel also found the treatment of criminal usury as a felony in New York to be further evidence of the importance of usury law to New York in the course of her review of the usury statutes. The *Madden* court ruled that New York's interest in preventing criminal usury prevails over the choice of law forum agreed to in the parties contract.  (New York's substantive usury laws were to be applied over choice of law forum agreeing to Delaware State law) . Defendant contends that PowerUp is using the choice of law provision solely to shield itself from any claim of usury by its clients.  Even if Plaintiff proves it is incorporated in the State of Virginia, and that single

6

fact alone could force a court to apply the stated forum in a choice of law clause notwithstanding being unable to meet the other requirements under the reasonable relationship test, New York's fundamental public policy reflected in its usury laws supersede that test and New York law must apply.

### POINT II
### THE TRANSACTION BETWEEN THE PARTIES IS SUBJECT TO NEW YORK'S CRIMINAL USURY STATUTE, PENAL LAW 190.40.

A loan at an overall interest rate exceeding 25% per annum constitutes criminal usury under Penal Law §190.40, and is void, *ab initio,* pursuant to G.O.L. §5-511. *See* N.Y. PENAL LAW § 190.40; New York G.O.L.§5-521(3) specifically permits a corporation to interpose the defense of criminal usury. To determine whether a transaction is usurious, courts look not to its form but rather to its substance or real character. *Merchant Funding Services, LLC v. Volunteer Pharmacy, Inc.,* 55 Misc.3d 316, 44 N.Y.S.3d 876 *(Sup. Ct. Westchester Co. 2016). See also Pearl Capital Rivis Ventures, LLC v RDN Constr., Inc.* 2016 NY Slip Op 26344 *(Sup. Ct. Westchester Co. 2016).* There can be no usury unless the principal sum advanced is repayable absolutely. If it is payable upon some contingency that may not happen, and that truly exposes the lender to a hazard of losing the sum advanced, then the reservation of more than legal interest will not render the transaction usurious, in the absence of a showing that the risk assumed was so unsubstantial as to bear no reasonable relation to the amount charged. *Id.* Defendant will demonstrate by the specific terms of the agreement, that this transaction is nothing more than a risk free short-term loan. Denominating a loan document by another name, as in this case, by calling it a 'Merchant Agreement,' and including in its verbiage of a purported purchase of accounts receivables that is unsupported by actual receivables dedicated to repayment, does not shield it from the judicial determination that it contemplates a criminally

usurious transaction, which is void, *ab initio*, as a matter of law. (See *Merchant Funding Services, LLC v. Volunteer Pharmacy, Inc.*) *Id.* Defendant will demonstrate that a triable issue of fact exists as to this issue under the transaction between the parties.

### A. The Transaction Between the Parties is a Loan subject to New York's Criminal Usury Statute.

The usury laws are applicable to only loans or forbearances. *See Orvis v. Curtiss*, 157 N.Y. 657, 661, 52 N.E. 690, 691 (1899), *Bristol Inv. Fund, Inc. v. Carnegie Int'l Corp.*, 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003) (held that defense of usury must be founded upon a loan or forbearance of money). The transaction between the parties is merely a loan. In order for a transaction to constitute a usurious loan, there must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender". *Merch. Funding Servs., LLC v. Volunteer Pharm., Inc.*, 2016 NYLJ LEXIS 4582, *10-11 See also *K9 Bytes, Inc. v. Arch Capital Funding, LLC*, 2017 NY Slip Op 27166, ¶¶ 5-6, 56 Misc. 3d 807, 816-17, 57 N.Y.S.3d 625, 632-33 (Sup. Ct.) Plaintiff may rely on the opinion found in *K9 Bytes, Inc.*, to assert the position that the transaction bears enough risk to not be characterized as a loan. See *Freitas v. Geddes Sav. & Loan Assn.*, 63 NY2d 254, 261, 471 N.E.2d 437, 481 N.Y.S.2d 665 [1984] (held merely telling the Court that risk is contemplated under the terms of the Agreement is inadequate). See *Merch. Funding Servs., LLC v. Volunteer Pharm., Inc.*, 2016 NYLJ LEXIS 4582 (court noted risk of loss is to be distinguished from the risk of nonpayment that is inherent in every loan). Bankruptcy, inability to meet outstanding debt, and future revenue projections are all risks associated with a typical merchant transaction. In the parties transaction herein, Plaintiff insulates itself from all those

forms of risk. Plaintiff may improperly focus on the element of risk with regard to timing of payments. As the court in *Merch. Funding Servs., LLC* stated, Plaintiff may misconstrue the meaning of "risk" in an investment versus loan context. Plaintiff characterizes what really is risk of nonpayment as risk of loss. Risk of nonpayment in a usury context is irrelevant. However, it is clear that regardless of the timeliness of the payments, Plaintiff is guaranteed absolute repayment and the Plaintiff bears no actual risk. The parties' agreement presents itself as a purchase by Plaintiff of Defendants' receivables. The Defendant's declaration shows that Plaintiff never purchased anything from the Defendant. (See *Ford Decl., at* ¶ 25). Plaintiff never asked for the identity of any receivable, never knew of any customer or receivable and never received any invoices of Defendant. The agreement intended for Defendant to collect its' receivables just like before. *Endico Potatoes v. CIT Group/Factoring*, 67 F.3d 1063, 1069, 2d Cir. Ct. of App. N.Y. [1995]:

"Where the lender has purchased the accounts receivable, the borrower's debt is extinguished and the lender's risk with regard to the performance of the accounts is direct, that is, the lender and not the borrower bears the risk of non-performance by the account debtor. If the lender holds only a security interest, however, the lender's risk is derivative or secondary, that is, the borrower remains liable for the debt and bears the risk of non-payment by the account debtor, while the lender only bears the risk that the account debtor's non-payment will leave the borrower unable to satisfy the loan."

Clearly, the parties' agreement intended to make the repayment obligation a fixed daily payment by specifically providing for daily payments of $632.97 per day. (See DKT#22, Plaintiff's Ex. A., (Factoring Agreement)) . *In re O.P.M. Leasing Services, Inc.,* 30 B.R. 642, 648 (Bankr. S.D.N.Y. 1983):

"Although the agreement contained terms like "purchase", "sale", and "discount", the Third Circuit found that Major's credit obligation to Castle was nevertheless merely a transfer to secure indebtedness. In so ruling, the court reasoned that none of the risks of un-collectability generally present in a true sale of accounts was transferred to the credit company because of the credit company's recourse to Major's. Thus, the true nature of the transaction was that of a secured loan."

Under the parties' agreement there was no forgiveness of the loan if Defendants were unable to collect a receivable. _Home Bond Co. v. McChesney_, 239 U.S. 568, 575-576 [1916]:

"[A]ppellant, by virtue of the contracts between it and the bankrupts *** did not become the purchaser or owner of the accounts receivable in question, and *** the transactions were really loans, with the accounts receivable transferred as collateral security. *** To quote from the opinion of the District Court: "The considerations which support this conclusion are that the bankrupts were to and did collect the accounts and bear all expense in connection with their collection * * * In so far as the contracts in question here use words fit for a contract of purchase they are mere shams and devices to cover loans of money at usurious rates of interest."

As these authorities clarify, though trying to act as a purchase, the parties' agreement was a loan. The net loan proceeds were $124,160.00 (what Defendant received at closing) at **66%**[1] interest, payable over 272 days by fixed payments of $632.97 each business day. The parties' agreement mentioned a "specified percentage". It had nothing to do with the interest rate. If a lender makes a loan at 66% annual interest and calculates that this 66% interest loan can be repaid using 18% of the borrower's daily income, and the lender calls the 18% a "specified percentage" of the daily income, the 18% has nothing to do with the interest rate being paid on the loan. The interest rate is 66%. Plaintiff's agreement made the "specified percentage" irrelevant by using a fixed daily payment amount of $632.97.

## B) The November 12, 2015 Revenue Based Financing Agreement is Not A Merchant Agreement

In order for a transaction to be considered a merchant based transaction that would not be subject to the NY criminal usury statute, courts in this state must find certain identifiable elements that could allow a court to determine that such a transaction is sufficiently risky to be considered an investment, is a Merchant Agreement, and not a loan subject to the state's usury laws.  This is a fact intensive analysis and most likely will require expert testimony at trial to

---

[1] The actual interest rate should be calculated on an annual (365 day) basis to determine the annual interest rate. This loan's repayment completion is due substantially before a year. 272 days, which is only 75.5% of the year so the effective annual rate is much higher.

resolve. To determine if a Merchant Funding Agreement is a real Merchant Funding Agreement, the court must find certain clauses including a "*reconciliation clause,*" an "*indefinite term*" clause, and the absence of a "*guarantee.*" *Pearl Capital Rivis Ventures, LLC v. RDN Constr., Inc.*, 2016 NYLJ LEXIS 3716.  The Defendant will demonstrate that there exists, at the very least, triable issues of fact as to those key elements. The November 12th, 2015 transaction documents seemingly include language that on its face, appear to meet these elements but in reality, are illusory. In *Professional Merch. Advance Capital, LLC v C Care Servs., LLC* (2015 US Dist LEXIS 92035, *11, 2015 WL 4392081 [SD NY 2015]), the Court "reserve[d] ruling on damages pending a supplemental submission from Plaintiff as to whether the Agreement — though nominally structured as a sale of accounts receivable — in fact violate[d] New York's criminal usury law." It noted that "[l]ooking beyond the form of [the] transaction and examin[ing] its substance, it could be argued that the Agreement, which obligates Defendants to make a minimum weekly payment irrespective of C Care's accounts receivable and subjects Plaintiff to no downside whatsoever aside from the risk that the borrower will fail to make the required payments, is in fact a loan." (*Id.* at *13).

### The Purported Reconciliation Clause

The Plaintiff may claim that a reconciliation provision is evidence that the transaction is not a loan based on a recent Appellate Division case. (See *Rapid Capital Fin., LLC v Natures Mkt. Corp*. 2017 NY Slip Op 27340 decided on October 11, 2017 Supreme Court, Westchester County. However, in the *Rapid Capital* case, that Defendant did not have a mechanism to request reconciliation, rather, the burden was on Plaintiff to do so based on Defendant supplying monthly bank statements. The reconciliation clause in that case placed a burden on Plaintiff to make adjustments on its own, based on those bank statements. By way of comparison, in this

11

case, compliance with the reconciliation request is still in Plaintiff's sole discretion.  Plaintiff's

sole discretion to honor any reconciliation request is far from compulsory and  from taking any

risk; while the daily payments remain absolute. (*See* DKT#22, Ex. "A" ("Factoring

Agreement")). The purported reconciliation clause in this case is thus illusory and mere

nomenclature to disguise the true character of the transaction. The transaction documents here

include reconciliation language. The Revenue Based Funding Agreement dated November 22,

2015 states:

> "*POWERUP may upon Merchant's request, adjust the amount of any payment due under this Agreement **at POWERUP's sole discretion** and as it deems appropriate in servicing this Agreement.*" (***emphasis added***).

This provision is illusory because plaintiff reserved the unfettered right, in its sole

discretion, whether or not to honor a reconciliation request by the Defendant, thereby controlling

its risk of loss. In this case, the reconciliation language specifically reserves to the Plaintiff

complete discretion whether or not to honor such a request.  This is entirely different from the

valid merchant funding agreement found in *Retail Capital, LLC v. Spice Intentions Inc.*, 2016

N.Y. Misc. LEXIS 4883, 2017 WL 123374 at *2 (Sup. Ct. Queens Co. Jan. 3, 2017) (not a loan

when "The agreement provided a reconciliation on demand provision whereby the parties [were

each] permitted to demand the monthly reconciliation of funds from the other to ensure that

neither entity collected [***13]  more or less of the sales proceeds than they were contractually

entitled to collect from the designated bank account."). *K9 Bytes, Inc. v. Arch Capital Funding,

LLC*, 2017 NY Slip Op 27166, ¶ 6, 56 Misc. 3d 807, 817, 57 N.Y.S.3d 625, 633 (Sup. Ct.). The

November 22, 2015 Revenue Based Funding Agreement reserved to Plaintiff the power to

reconcile in its sole discretion.  This makes this a contingency solely in the control of Plaintiff

(the lender). That exclusive control, in context of a usury claim, is not dissimilar to the exclusive

discretion (option) reserved by the lender in *Blue Wolf Fund v American Stevedoring, Inc.*, 105

A.D. 3d 178 (2013)(NY Slip Op. 1483) wherein the Appellate Division, 1St Dept. held that when

a contingency is in the exclusive control of the lender, then that contingency must be considered

and accounted for in a usury analysis (risk). While *Blue Wolf* dealt with an option reserved by

that lender at the time of the loan was made as to certain escrowed funds, the underlying concept

is that a certain provision in an agreement that provides to a lender exclusive and sole discretion

over its risk must be considered in a usury analysis. In this case, Plaintiff reserved to itself the

sole option to honor, or not honor, a request by defendant for reconciliation. That is not a real

reconciliation clause creating risk of loss, hence, the reconciliation clause is illusory.

 No matter how Plaintiff tries to describe the function of the reconciliation provision, it is

clear that the payments are made towards repayment of the "Receipts Purchased Amount" in the

amount of $172,800.00.  In the PURCHASE AND SALE OF FUTURE RECEIPTS it states:

> *"The Receipts Purchased Amount shall be paid to POWERUP ("the Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's Receipts, until such time as POWERUP receives payment in full of the Receipts Purchased Amount."*

 Plaintiff's documents create the illusion that a reconciliation provision is somehow

"forgiving" and not demanding repayment from Defendant.  This is entirely misleading since the

reconciliation provision will debit funds, in the fixed daily amount from Defendant's account,

regardless of its monthly revenue *(See Ford Decl.*, at ¶¶ 26-27).  In  *Band Realty Co. v. N.*

*Brewster, Inc.*, 37 N.Y.2d 460, 373 N.Y.S.2d 97, 335 N.E.2d 316 (1975), the court developed the

financial analysis to determine whether charges exceeded the states limits on charging interest.

Following the traditional method of computation from *Band Realty Co.*, for usury purposes, the

original issue discount in this case is in the amount of $48,640.00.[2] *Id.* That is already 39% of the

Purchase Price. A 39% rate of interest would be criminally usurious in the State of New York

pursuant to Penal Law §190.40 and raises a triable issue of fact. The Specified Percentage

should be noticed as interest if it follows the opinion in *Phlo Corp. v. Stevens*, 00 Civ. 3619

(DC), 2001 U.S. Dist. 17490, (S.D.N.Y.). In *Phlo Corp.*, the court held that any contingent right

the lender holds should be included in the overall interest calculation. In the PURCHASE AND

SALE OF FUTURE RECEIPTS it states:

> *"POWERUP may, upon Merchant's request adjust the amount of any payment under this Agreement, at POWERUP's sole discretion and as it deems appropriate in servicing this Agreement."*

Even though the reconciliation provision provides for an adjustment of the specified daily

repayment amount in accordance with the merchant's revenue, it is clear that at any time, and at

POWERUP's sole discretion, it may adjust the amount of any payment. (*See Ford Decl.*, at

¶¶22-23)

**The length of the repayment obligation has a definitive end date.**

Plaintiff contends that repayment is completely contingent upon performance of the

merchant's business and that timing of payment could hypothetically be made in six months, one

year, two years, or maybe never. Again, Plaintiff is attempting to mislead the court to avoid a

defense of criminal usury. POWERUP states that because of this uncertainty in the timing of

---

[2] This value is typically reached by finding the difference between the issue price and the redemption price. Stated differently, what was the difference in price between amount paid for and the actual amount to be received. Here, the issue price is the 'Receipts Purchased Amount' found in the Agreement. The redemption price would be the amount of actual funds received by defendant which is the 'Purchase Price'. $172,800.00 (Receipts Purchased Amount) - $124,160.00 (Purchase Price) = $48,640.00 original issue discount.

payment, it is POWERUP who is bearing the risk of the transaction.  In this case, this

transaction language is also illusory because the agreement, while stating is for an "indefinite

term", requires the Defendant to make fixed daily payments until the whole stated amount of

$172,800.00 (not the amount received of $124,160.00) is repaid. This fixes the end date (finite

date) when the $172,800.00 is fully paid back and based on the fixed daily payment of $632.97

**the term is  272 days**, certainly not indefinite. As the transaction does have a definite final

period determined solely by Defendant's obligation to pay $172,800.00 at $632.97 per day, the

"indefinite term" language appearing in the transaction documents is illusory. There have been

cases where receivables finance companies that genuinely invested in a client's receivables were

held to have been investors, not lenders, though none of these opinions discussed the effect of a

fixed, immutable daily payment or the requirement that the "merchant" maintain the same

financial condition to avoid a breach. _Kelly, Grossman & Flanagan, LLP v Quick Cash, Inc._, 35

Misc. 3d 1205(A), 1205A [2012]; _Professional Merchant Advance Capital, LLC v Your Trading_

_Room, LLC_, 2012 NY Slip Op 33785(U), Sup Ct Suffolk Cty.; _Platinum Rapid Funding Group_

_Ltd., v. VIP Limousine Services, Inc., et al._, Supreme Court, Nassau County, Index No.:

604163/2015. Other opinions involving receivables lending have concluded usury (_People v._

_Service Institute, Inc._, 101 Misc. 2d 549, 550-553 [1979]) especially where the fixed daily

payment was exacted. _Merch. Cash & Capital LLC v. Edgewood Grp., LLC_, 2015 U.S. Dist.

LEXIS 94162, 10-12 (S.D.N.Y.):

> "It is not entirely clear to this Court what differentiates this arrangement from a loan, to
> which lending laws (such as usury caps) would apply. Although the Merchant
> Agreement explicitly states that the transaction at issue is not a loan (see Merchant
> Agreement § 4.1 (stating that the transaction "is not intended to be, nor shall it be
> construed as, a loan"); id § 5.11 (stating that Edgewood and Crocker agree not to

15

institute or prosecute any claim of usury, and that, in the event of a breach of this provision, they will be liable for Plaintiff's costs, including attorneys' fees)), the structure of the transaction suggests otherwise. While the Merchant Agreement apparently contemplates the purchase of a percentage of future credit card receivables, no percentage is specified. Instead, Edgewood Group bound itself, through the ACH Agreement, to making regular payments over the course of about eight months, until it paid the amount it had received up front, plus 42 percent more. This arrangement looks substantially like a loan (as opposed to Plaintiff's acquisition of a portion of Edgewood's future receivables), but with an effective interest rate of over 50 percent per year."

In receivables funding cases, opinions on usury that are not based on the requirement of a fixed daily payment involve irrelevant, outmoded agreements. Any opinion believing that the agreement was a genuine purchase of receivables was not presented with the above quoted federal cases demonstrating that there was no purchase but only a loan with a secured interest. The agreement, here, provided Plaintiff with a security interest. Any opinions that the Plaintiff made an investment did not have presented the provisions under which the Defendants had to maintain their same financial condition to not be in breach.

### The Transaction is Guaranteed

Furthermore, another aspect of the transaction which does not support Plaintiff's claim that this is a Merchant Agreement is that POWERUP has recourse if Defendant does not generate future proceeds. See *Freitas v. Geddes Sav. & Loan Assn.*, 63 NY2d 254, 261, 471 N.E.2d 437, 481 N.Y.S.2d 665 [1984]) (held that the requirement of the two guarantors, along with the other facts and circumstances set forth clearly demonstrate that the principal sum advanced was absolutely repayable with calculated interest that exceeds the legal rate and supports a finding that the evidence outweighs the presumption against a finding of usury) Under 1.11 of the Agreement, Plaintiff has the ability to enforce a guarantee against Defendant and/or enforce a security interest in collateral in the event Defendant claims Bankruptcy. (*See*

16

Ford Decl., at ¶14 ).  *See also  IBIS Capital Grp., LLC v. Four Paws Orlando LLC,* 2017 NY Slip Op 30477(U) (Sup. Ct.)  (held that should merchant file for bankruptcy, the personal guaranty and confession of judgement may be filed which works against capital management's claim that transaction is not a loan).  In other words, the ability to execute on a guaranty in the event Defendant cannot make payments negates Plaintiff's contention that this transaction is not a loan.  At the very least, an analysis under this provision requires expert testimony at trial, and since the operative language raises a question of fact, summary judgment must be denied.


### POINT III
### THE EFFECTIVE INTEREST RATE OF THE NOVEMBER 12, 2015 TRANSACTION EXCEEDS 25% AND VIOLATES THE N.Y. CRIMINAL USURY CAP PURSUANT TO 190.40

A loan with an overall interest rate exceeding 25% per annum constitutes criminal usury under Penal Law §190.40, and is void, *ab initio*, pursuant to G.O.L. 5-511. See *Rothstein v. Isolation Film LLC,* 2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017)  Such a loan is void and unenforceable. *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.,* 2013 NY Slip Op 1483, 105 A.D.3d 178, 961 N.Y.S.2d 86 (App. Div.) (court noted that to compute the effective rate of interest the court must combine the stated interest as well as any form of disguised interest).  To determine whether a transaction is usurious, courts look not to its form but to its substance or real character. *Merch. Funding Servs., LLC v. Volunteer Pharm., Inc.,* 2016 NYLJ LEXIS 4582  The Original Issue Discount ("OID") on the face of the transaction documents alone proves criminal usury and intent as a matter of law. An OID is defined under Internal Revenue Code, Title 26 U.S. Code §1273 as "the stated redemption price over the issue price". The formula used to determine the amount of OID is a simple mathematical equation. (*See Band Realty Co. v. N.*

*Brewster, Inc.*, 37 N.Y.2d 460, 373 N.Y.S.2d 97, 335 N.E.2d 316 (1975) *(See Also Murlar*

*Equities Partnership v. Jimanez,* Sup. Ct. Bronx, NY Slip Opinion 31833(U) Sept. 1, 2016*).* The

stated redemption price (repayment obligation) is $172,800.00 and the issue price (what was

actually advanced) was $124,160.00. The documents presented as part of plaintiff's motion for

summary judgment indicate that the amount defendant is obligated to repay absolutely is

$172,800.00 at a fixed daily payment rate of $632.97, and bears a purported face interest rate of

18%. However, those documents show that Plaintiff only funded $124,160.00. Plaintiff further

deducted the amount of $3,840.00 from the initial loan proceeds (of $128,000.00) as a stated

origination fees with net funds to Defendant of $124,160.00. This amounts to a total of

$48,640.00 in original issue discount (interest) charged on this transaction. This demonstrates

criminal usury on its face. That means according to the face of the transaction documents,

plaintiff took 39% in OID interest. When the total of these OID discounts ($48,640.00 in

disguised interest payments) are added together with the stated interest payable during the term

of the loan at 18% of $172,800.00 ($31,104.00), results in total interest charged under the Note

of $79,744.00. When this interest is expressed as a percentage of the net loan funds received by

the borrower (Defendant) at closing of $124,160.00, it yields an effective interest rate not of

18%, **but of a criminally usurious 66%.** These charges are all clearly stated, discernable and

identifiable from the transaction documents made of record before this court. (See DKT#22, Ex's

A and D). This demonstrates criminal usury on its face.  At the very minimum, Defendant has

raised a triable issue of fact as to the actual interest rate charged by Plaintiff under the November

22, 2015 transaction and summary judgment must be denied.


### POINT IV
### THIS TRANSACTION IS VOID, *ab initio*, PURSUANT TO GEN. OBLIG. LAW §5-511

The following New York usury statutes govern this transaction and set forth the basis for

avoiding this transaction. G.O.L §5-501 and §5-511 state:

### NY CLS Gen. Oblig. §5-501: Rate of Interest; Usury Forbidden

Except as otherwise provided by law, interest shall not be charged, taken or received on any loan or forbearance at a rate exceeding such rate of interest as may be authorized by law at the time the loan or forbearance is made, whether or not the loan or forbearance is made pursuant to a prior contract or commitment providing for a greater rate of interest...added)

### NY CLS Gen. Oblig. §5-511: Usurious Contracts Void.

All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever...whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void...5-511).

It is well settled law in New York that criminally usurious loans are void *ab initio*. *See Hufnagel v. George*, 135 F. Supp. 2d 406 (S.D.N.Y. 2001) (held that loan was void *ab initio* as a matter of law pursuant to G.O.L §5-511. *Hufnagel* relied on the New York Court of Appeals decision in *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986)(held that all usurious transactions are void *ab initio* and the exception in §5-511 is only applicable to banks or savings associations). See also *Rothstein v. Isolation Film LLC, 2017 U.S. Dist. 59133 (S.D.N.Y. Mar. 22, 2017)* (court properly noted that recent New York decisions have voided criminally usurious transactions after *Blue Wolf*). See *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.* (held that unless banker or lender association, criminally usurious transaction along with all collateral agreements are void and unenforceable under G.O.L. §5-511).

19

This transaction violates G.O.L §5-501, §5-511 and Penal Law §190.40. The effective interest rate (66%) is well above the 25% per annum maximum cap imposed by §190.40. The law today pertaining to usury remains basically unchanged from it's 142-year history in New York, that loans charging interest rates exceeding the usury limits are void as a matter of law and anything over the criminal usury level, violates New York's public policy. This is evident by the specific inclusion of §190.40 and §190.42 into the General Obligations Laws reflecting the legislature's intent to expand grounds for relief and if applicable, impose additional sanctions on the usurer depending on the rate charged (criminal penalties). The confusion surrounding the issue of whether criminally usurious contracts are void stem from the fact that prior decisions have improperly categorized usury into two "types." The New York Legislature did not intend to create two different "types" of usury, but instead enacted the criminal provision to create two "levels" of usury in a civil context. The legislation did this specifically to insure that entities that are capable of carrying out usurious loans to a greater degree cannot escape the grasps of §5-501 and §5-511 and intentionally and additionally punish those to a greater extent for charging rates exceeding the criminal usury threshold. Even the plain language of each of the G.O.L statutes state in its headings §5-501 **"Usury Forbidden"**, and §5-511 **"Usurious Contracts Void"**. These statutes do not bifurcate usury into criminal or civil or say one is void, and not the other. Even the plain language of §5-501(6)(a)-(b) demonstrates that the legislature intended for different "levels" of usury under the General Obligations Laws since the civil level (16%) does not apply if the amount of the loan exceeds $250,000.00. The same "civil" statute also makes clear that

§190.40 and §190.42 do not apply to loans over $2,500.000. Those are the legislative usury

threshold levels, in a civil suit context, set by New York's Legislature.

The Second Circuit Court of Appeals last addressed this issue (in dicta only) in 2002

in the case _Brodie v. Schmutz_ (_In re Venture Mort. Fund, L.P._), 282 F.3d 185 (2d Cir. 2002).

Prior to the _Brodie_ case, courts in this district have unconditionally recognized that usurious

loans are void as a matter of law. However, in _Brodie_, the 2nd Circuit raised the seemingly

undecided question of whether the application of the criminal usury statute provides for

voiding a criminally usurious loan because §190.40 does not expressly say such loans are

void. The Second Circuit in _Brodie_ seemingly focused on the language solely in §190.40

instead of looking at the "body of usury law" that would have to include the General

Obligations Laws, Sec. 5. The court in _Brodie_ stated, "_the statutory provisions that bear_

_upon whether a criminally usurious loan is void (without answering the question) are set_

_forth in the margin._"   However, since _Brodie_, there is still some obvious confusion among

some Federal Courts in this Circuit, as well as some New York State Supreme Courts

regarding this issue. The courts that have held that criminally usurious loans were not void

are a small minority of cases that disregarded the historical analysis in _Szerdahelyi_ as well as

all of the NYS App. Div. Courts decisions since _Brodie_. This confusion ostensibly is derived

from the complicated nature of the body of New York usury law, the courts overall

reluctance to find criminal usury, and the less than stellar drafting of the usury statutes

themselves by the Legislature.

However, after *Brodie*, **all of the N.Y.S. Appellate Division cases that addressed this issue unanimously held that a loan that violates §190.40, is void *ab initio* under G.O.L §5-511.** *Brodie* specifically referenced *Hufnagel* that voided a criminally usurious loan due to public policy concerns under G.O.L §5-511. Those public policy concerns were incorporated into the General Obligations Laws at a time when loan-sharking and other evolving financial crimes were becoming more sophisticated. For that reason, the legislature intended the penalties for criminal usurers to be harsh. In *Brodie,* the court noted that the limit to voiding a usurious loan is on a loan with a principal amount exceeding $2.5 million simply because it would upset the foundations of basic financial arrangements. Defendant points out to this court that there is no legislative difference between what's called "civil" usury and "criminal" usury when it comes to §5-511 and its avoidance feature. Usury is usury, and the Legislature saw fit to make two "levels" of usury in response to growing loan-sharking in the state, one that exceeds 16%, and the other that exceeds 25%. The only real differences between the two are simple. Corporations cannot plead civil usury as a defense (but corporations can plead criminal usury as a defense – see G.O.L §5-521(3), and that the criminal usury statute has a criminal penal component above the forfeiture penalty under G.O.L §5-511 (a harsher punishment – jail time). G.O.L §5-501 caps the maximum amount upon which to assert a claim under §190.40 at $2,500,000.00. The plain language of §190.40 as read with §5-501 states that anything below $2.5 million is subject to criminal usury and once found, the Appellate Division Courts in New York unanimously hold that G.O.L §5-511 voids the transaction. This is the only and proper and consistent reading of the usury laws. The results at the NYS Appellate Division level are consistent with the original intent of the legislature in drafting the usury laws as explained in *Curtiss* and *Szerdahelyi*.

## CONCLUSION

For the reasons stated above, Defendant Cardinal Energy Group, Inc., respectfully requests that this court deny Plaintiff's motion for summary judgment because there exists triable issues of fact and grant all such further relief as the court deems appropriate.

Dated:  June 4, 2018
       Jericho, New York

**THE BASILE LAW FIRM P. C.**

**/S/ Mark R. Basile**
Mark R Basile, Esq. [MB-2201]

**The Basile Law Firm P.C.**
*Attorneys for Defendant CEGX*
400 Jericho Turnpike - Ste. 104
Jericho, New York 11753
516-455-1500
mark@thebasilelawfirm.com

### Certificate of Service

I, *Mark R. Basile*, an attorney admitted to practice in the State of New York and this Federal Court, and an attorney at The Basile Law Firm P.C., attorneys for the defendants, hereby certify that:

On the 4th day of June 2018, I caused service of the Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment dated June 4, 2018,  as well Responses to Plaintiff's Rule 56. 1 Statement of Undisputed Material Facts, and Stanley Robert Ford's Declaration including all relative exhibits, dated May 31, 2018 by mailing via US Mail, to Robert P. Johnson of Naidich Wurman LLP on June 4, 2018. On June 4, 2018, I alsoserved the above via email on Mr. Robert Johnson, email address (rjohnson@nwlaw.com) who has appeared and consented to this manner of service in this action.

TO:

Robert P. Johnson, Esq.
NAIDICH WURMAN LLP
*Attorney for Plaintiff*, PowerUp Lending Group, LTD
111 Great Neck Rd Suite 214, Great Neck, NY 11021
Phone: 516.498.2900
Email: rjohnson@nwlaw.com
Dated: JUNE 4, 2018Jericho, New York                      _____/S/   Mark R. Basile_____

24