Exhibit E



## MERCHANT AGREEMENT

Agreement dated **January 11, 2016** between Pearl Beta Funding, LLC ("PBF") and the Merchant listed below ("MERCHANT")
(Month) (Day) (Year)

### MERCHANT INFORMATION

Merchant's Legal Name: **CHAMPION AUTO SALES LLC**

D/B/A: **CHAMPION MOTORSPORTS LI**   State of Incorporation / Organization: **NY**

Type of (check one): Entity   Corporation   Limited Liability Company   ✓Limited Partnership   Limited Liability Partnership   Sole Proprietorship   Other

Physical Address: **110 SUNRISE HWY**   City: **WEST ISLIP**   State: **NY**   Zip: **11795-2012**

Contact Name: **MICHAEL GONZALEZ**   Contact Number: **+1.631.620.3100**

Mailing Address: **184 REDWOOD AVE**   City: **INWOOD**   State: **NY**   Zip: **11572**

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to PBF (making PBF the absolute owner) in consideration of the "Purchase Price" specified below, the "Specified Percentage" of all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to PBF.

Purchase Price: $ **57,063.00**   Specified Percentage: **5** %   Specific **DAILY** Amount: $ **680.00**   Purchased Amount: $ **81,600.00**

Merchant may use the Purchase Price solely for business purposes and not for personal, family or household purposes. Merchant is selling a portion of a future revenue stream to PBF at a discount, not borrowing money from PBF. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by PBF. Merchant going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. PBF is entering into this Agreement knowing the risks that Merchant's business may slow down or fail, and PBF assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give PBF a reasonable and fair opportunity to receive the benefit of its bargain.

PBF will debit the Specific Amount each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, PBF (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as PBF receives payment in full of the Purchased Amount. If Merchant's bank is closed on a business day, then PBF will debit the Specific Amount for that day on the next business day in addition to the regularly scheduled debit. Merchant hereby authorizes PBF to ACH debit the Specific Amount from the Account on a daily basis. PBF's payment of the Purchase Price shall be deemed the acceptance and performance by PBF of this Agreement. Merchant understands that it is responsible for ensuring that the Specific Amount to be debited by PBF remains in the Account and will be held responsible for any fees incurred by PBF resulting from a rejected ACH attempt or an Event of Default. PBF is not responsible for any overdrafts or rejected transactions that may result from PBF's ACH debiting the Specific Amount under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between PBF and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT (#1) By: **MICHAEL GONZALEZ**
(Print Name and Title)                                          (Signature)

FOR THE MERCHANT (#2) By: _____
(Print Name and Title)                                          (Signature)

BY OWNER (#1) By: **MICHAEL GONZALEZ**
(Print Name and Title)                                          (Signature)

BY OWNER (#2) By: _____
(Print Name and Title)                                          (Signature)

Version: PBF20151120

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## 1. TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to PBF with a Bank acceptable to PBF to obtain electronic fund transfer services for the Account, and (B) execute an agreement acceptable to PBF with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide PBF and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes PBF and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to PBF for the receipts as specified herein and to pay such amounts to PBF. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by PBF or not. This additional authorization is not a waiver of PBF's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which PBF did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of PBF.

**1.2 Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by PBF as per the terms of this Agreement.

**1.3 Future Purchase of Increments.** Subject to the terms of this Agreement, PBF offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. PBF reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

**1.4 Adjustments to the Specific Amount.** The Specific Amount is intended to represent the Specified Percentage of Merchant's Receipts each calendar month. At any time, PBF may adjust the Specific Amount so that the amount received by PBF in the future more closely represents the Specified Percentage. Also, once each calendar month Merchant may request that PBF reconcile Merchant's actual receipts and adjust the Specific Amount so that the amount received by PBF in the future more closely represents the Specified Percentage. Upon receipt of a written reconciliation request from Merchant, PBF may request any and all information from Merchant that PBF, in its sole judgment, believes is necessary to accurately reconcile the amount PBF has received from Merchant with the actual Specified Percentage. PBF shall not be required to adjust the Specific Amount until such time as it has received all such requested information.

**1.5 Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize PBF and its agents to investigate their financial responsibility and history, and will provide to PBF any authorizations, bank or financial statements, tax returns, etc., as PBF deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. PBF is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.6 Transactional History.** Merchant authorizes all of its banks, brokers and processors to provide PBF with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide PBF with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from PBF.

**1.7 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by PBF for monies owed to PBF from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by PBF.

**1.8 No Liability.** In no event will PBF be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of PBF's attorney's fees and expenses resulting therefrom.

**1.9 Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, PBF, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and PBF agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PBF to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. PBF has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PBF in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest,- it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that PBF has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PBF shall promptly refund to Merchant any interest received by PBF in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PBF not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.11 Power of Attorney.** Merchant irrevocably appoints PBF as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PBF from Processor, or in the case of a violation by Merchant of Section 1 or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to PBF, and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which PBF may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and

**1.12 Protections against Default.** The following Protections 1 through 8 may be invoked by PBF immediately and without notice to Merchant in the event (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the PBF electronic check processor (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to PBF; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers moves sells disposes or otherwise conveys its business and or assets without (i) the express prior written consent of PBF, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PBF; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor, or (f) Merchant fails to provide PBF with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from PBF. These protections are in addition to any other remedies available to PBF at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** PBF may enforce the provisions of the Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** Merchant hereby authorizes PBF to execute in the name of the Merchant a Confession of Judgment in favor of PBF in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, PBF may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

**Protection 4.** PBF may enforce its security interest in the Collateral.

**Protection 5.** The entire Purchased Amount and all fees (including reasonable attorney's fees) shall become immediately payable to PBF from Merchant.

**Protection 6.** PBF may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, if PBF recovers a Judgment against Merchant, Merchant shall be liable for all of PBF's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to PBF. Upon breach of any provision in this Agreement, PBF may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. PBF may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to PBF.

**1.13 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally authorizes PBF to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that PBF obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against PBF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of PBF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.14 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by PBF, including this Agreement and any other PBF documents (collectively "Confidential Information") are proprietary and confidential information of PBF. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PBF to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles PBF to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.15 Publicity.** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes PBF to use its, his or her name in listings of clients and in advertising and marketing materials.

Initials

Version PBF20151120

**1.16 D/B/A's.** Merchant hereby acknowledges and agrees that PBF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PBF and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**1.1 Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to PBF, and future statements which will be furnished hereafter at the discretion of PBF, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise PBF of any material adverse change in their financial condition, operation or ownership. PBF may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to PBF within five business days after request from PBF. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**1.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**1.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**1.4 Insurance.** Merchant will maintain business-interruption insurance naming PBF as loss payee and additional insured in amounts and against risks as are satisfactory to PBF and shall provide PBF proof of such insurance upon request.

**1.5 Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PBF's prior written consent. Any such changes shall be a material breach of this Agreement.

**1.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PBF, nor shall Merchant change any of its places of business without prior written consent by PBF.

**1.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

**1.8 Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from PBF to Merchant, execute, acknowledge and deliver to PBF and/or to any other person, firm or corporation specified by PBF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**1.9 No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**1.10 Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PBF.

**1.11 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**1.12 Defaults under Other Contracts.** Merchant's execution of, and performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**1.13 Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling PBF the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or Guarantor shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Merchant; (d) the attempted ACH debit of the Specific Payment is returned NSF four times during the term of this Agreement; (e) Merchant shall transfer or sell all or substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depository accounts without the prior written consent of PBF (h) Merchant shall change its depositing account without the prior written consent of PBF, or (i) Merchant shall close its depositing account used for ACH debits without the prior written consent of PBF (j) Merchant's bank returns a code other than NSF cutting PBF from its collections. (j) Merchant shall default under any of the terms, covenants and conditions of any other agreement with PBF.

**3.2 Personal Guaranty.** In the Event of a Default, PBF will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to PBF for all of PBF's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3 Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4 hereof, PBF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy. All rights, powers and remedies of PBF in connection with this Agreement may be exercised at any time by PBF after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4 Costs.** Merchant shall pay to PBF all reasonable costs associated with (a) an Event of Default, (b) breach by Merchant of the Covenants in this Agreement and (c) the enforcement thereof, and(c) the enforcement of PBF's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5 Required Notifications.** Merchant is required to give PBF written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PBF seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

**4.1 Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PBF.

**4.2 Assignment.** PBF may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3 Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by (1) certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to PBF shall become effective only upon receipt by PBF. Notices to Merchant shall become effective three days after mailing.

**4.4 Waiver Remedies.** No failure on the part of PBF to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Binding Effect; Governing Law, Venue and Jurisdiction** This Agreement shall be binding upon and inure to the benefit of Merchant, PBF and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PBF which consent may be withheld in PBF's sole discretion. PBF reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PBF so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Specific Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by PBF to transfer such proceeding to an Acceptable Forum. ADDITIONALLY, MERCHANT AGREES THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY PBF WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE MAILING ADDRESS(ES) LISTED ON PAGE 1 OF THIS AGREEMENT.

**4.6 Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7 Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8 Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9 Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and PBF and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10 JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11 CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION. EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT) AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION

**4.12 Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

Initials 

Version PBF20151120