UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
POWER UP LENDING GROUP, LTD.,

                Plaintiff,                    **MEMORANDUM AND ORDER**
                                                   2:16-cv-1545 (DRH)(GRB)

    - against –

CARDINAL ENERGY GROUP, INC. and
TIMOTHY W. CRAWFORD,

                Defendants.
--------------------------------------------------------X

**APPEARANCES**

**NAIDICH WURMAN LLP**
Attorney for Plaintiff
111 Great Neck Road, Suite 214
Great Neck, NY 11021
  By:    Richard S. Naidich, Esq.
           Robert P. Johnson, Esq.

**ISAAC WILES BURKHOLDER & TEETOR, LLC**
Attorney for Defendants
2 Miranova Place, Suite 700
Columbus, OH 43215
  By:    Brian Mathew Zets, Esq.

**THE BASILE LAW FIRM**
Attorney for Defendant Cardinal Energy Group, Inc.
400 Jericho Turnpike, Suite 104
Jericho, NY 11753
  By:    Mark R. Basile, Esq.

**MENDES & MOUNT, LLP**
Attorney for Defendants
750 Seventh Ave.
New York, NY 10019
  By:    John P. Falcone, Esq.

**HURLEY, Senior District Judge:**

INTRODUCTION

Plaintiff Power Up Lending Group, LTD. ("Plaintiff") brought the instant action for breach of contract and fraud against Defendants Cardinal Energy Group, Inc. ("Cardinal") and Timothy W. Crawford ("Crawford," together with Corporate Defendant, "Defendants"). Presently before the Court is Plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 against Defendant Cardinal on its breach of contract claim, and that defendant's affirmative defenses. For the reasons set forth below, Plaintiff's motion is granted.

BACKGROUND

The following facts are taken from the Parties' Rule 56.1 Statements, and are uncontested unless otherwise stated.

On or about November 12, 2015, Plaintiff and Defendant Cardinal entered into a Revenue Based Factoring Agreement ("Agreement") that provided for an advancement of funds to Defendant Cardinal of "$128,000.00 with an 18% specified daily repayment amount of $632.97 and receipt purchased amount of $172,800.00." (P.'s R. 56.1 Stmt. [ECF No. 22-12] ¶ 1.) In other words, Defendants sold 18% of its future accounts receivable—paid by way of daily, automatic withdrawals from Defendants' bank account—until Defendants' total payments to Plaintiff equaled $172,800.00.

Plaintiff disputes that the Agreement is a merchant agreement for future accounts receivable and argues instead that it is "a short-term loan disguised as a Revenue Based Factoring Agreement." (Def.'s R. 56.1 Stmt. [ECF No. 39-2] ¶ 1.) The same date, the parties entered into a Security Agreement and Guaranty, and Defendants supplied a Corporate Resolution executed by Defendant Crawford. (P.'s R. 56.1 Stmt. ¶ 2.) Defendant Crawford also

executed a Disbursement Authorization, but the parties dispute how much money was disbursed for Defendant Cardinal's benefit. (*Id.* ¶¶ 3–4.) Plaintiff claims that $128,000.00 was disbursed. (*Id.* ¶ 4.) Defendant Cardinal claims that Plaintiff deducted $3,250 in charges, and only tendered $124,200 to Defendants.[1] (Def.'s R. 56.1 Stmt. ¶ 4.) Also on that date, Defendant Crawford executed a Customer Authorization Agreement that provided for ACH credits and debits so that Plaintiff would receive the daily payments as specified therein. (P.'s R. 56.1 Stmt. ¶ 5.) Plaintiff claims in its Rule 56.1 Statement that Defendant failed to make payment for December 24 and 28-30, 2015, January 5–7 and 8, 2016, and then ceased to make payments thereafter. (*Id.* ¶ 6–7.) Defendant Cardinal correctly notes that the Complaint states that Defendant also failed to make the required payment on December 31, 2015, and makes no statements about the payments in January, but rather says that Cardinal failed to make any payments after February 2, 2016. (Def.'s R. 56.1 Stmt. ¶ 6–7; *see also* Compl. ¶ 18.)

At some time in 2016, Defendants blocked the bank account from which automated clearing house[2] ("ACH") payments were being made. (P.'s R. 56.1 Stmt. ¶ 8.) Defendants only paid or repaid Plaintiff the sum of $28,0189.10, leaving a balance of $144,710.90. (*Id.* ¶ 9.) The Agreement provides for a default fee of $5,000 and an additional $2,500 bank default charge for impeding the ACH process. (*Id.* ¶ 10.) The sum of $152,210.10 is due under the Agreement. (*Id.* ¶ 11.) On March 18, 2015, Plaintiff issued a "Notice of Default." (*Id.* ¶ 12.) Plaintiff claims that the defaults were never cured, but Defendant Cardinal disputes that "the notes criminally

---

[1] The Court notes that there are some discrepancies in the facts as reported by the Parties regarding the exact amount disbursed to Defendant Cardinal by Plaintiff, and the exact dates of Defendants' failure to make payments. However, the Court finds that these facts are immaterial because both Plaintiff and Defendant agree that the Agreement was breached and that $152,210.10 is due under the Agreement if it is valid.

[2] An electronic network for financial transactions.

usurious nature makes the transaction void, ab initio" so there are effective no defaults. (Def.'s R. 56.1 Stmt. ¶ 13.)

At some time in 2016, Defendant Cardinal filed a Form 10Q with the U.S. Security and Exchange Commission ("SEC") for the quarter ending March 31, 2016, in which Defendant Cardinal's balance sheet listed the Agreement as a debt payable in the sum of $150,586.00, and listed this same amount owed to Plaintiff again on page F-11. (P.'s R. 56.1 Stmt. 14–15.)

Plaintiff originally stipulated to dismissing Defendant Crawford as part of its motion for summary judgment. However, on March 26, 2019, Plaintiff filed a letter addressed to the undersigned explaining that they wished to withdraw their stipulation of dismissal and proceed solely with their motion for summary judgment against Defendant Cardinal. (Letter from Plaintiff [ECF No. 40] at 2.)

## DISCUSSION

I. *Legal Standard for Summary Judgment*

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn.*

*Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id*. at 211 (citing *Matsushita*, 475 U.S. at 587).

II.   *The Parties' Arguments*

   A. Plaintiff's Claims

Plaintiff sets forth four causes of action in the Complaint: (1) breach of the Agreement by failing to make daily payments in December 2015, and from February 2, 2016 onwards; (2) breach of the Security Agreement and Guaranty, which conferred a security interest in favor of the Plaintiff in the collateral of Defendant Cardinal, "including all accounts, chattel paper, cash, equipment, inventory, and investment property[;]" (3) litigation expenses pursuant to the Agreement, and the Security Agreement and Guaranty, which both provide that in the event of a default, Plaintiff is entitled to recover all reasonable costs; and (4) fraud, for providing false financial information, asset information, banking records, and receipts that Defendants knew to be false at the time such documentation was provided. (Compl. ¶¶ 13–37.) In its motion for summary judgment, Plaintiff argues that it should be granted summary judgment on its breach of contract claim.

   B. Defendant Cardinal's Affirmative Defenses

In its memorandum in opposition, Defendant Cardinal sets forth five arguments. First, the transaction should be governed by New York law notwithstanding the choice of law clause in the Agreement providing that Virginia law applies. (Def.'s Mem. in Opp. [ECF No. 39] at 2–3.) Second, the transaction between the parties is subject to New York's criminal usury statute. (*Id.* at 7.) Third, the effective interest rate of the Agreement exceeds 25% percent and violates the criminal usury cap. (*Id.* 18.) Fourth, the Agreement is void, *ab initio*, pursuant to N.Y. Gen. Oblig. Law § 5-511. (*Id.* at 19.) And finally, summary judgment is not appropriate as there are triable issues of fact. (*Id.* at 23.) The Court will consider each of these arguments in turn.

III. *Applicable Law*

Both parties agree that the Agreement contains a choice of law clause that provides that Virginia law governs the transaction. (*See id.* at 2.) However, Defendant Cardinal argues that New York law should apply because Plaintiff is headquartered in New York, the transaction was negotiated in New York, the documents were generated in New York, and all payments made under the Agreement were to be received by Plaintiff's bank in New York. (*Id.* at 5.)

In New York, "the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored . . . ." *Freedman v. Chem. Constr. Co.*, 43 N,Y.2d 260, 265 (1977); *Royal Dispatch Servs., Inc. v. UBS Fin. Servs., Inc.*, 2012 WL 3113291, at *2, n.4 (E.D.N.Y. July 31, 2012). However, two limitations apply to this general policy: (1) the law of the state selected must have a reasonable relationship to the agreement, and (2) the law chosen must not violate a fundamental public policy of New York. *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 147 (S.D.N.Y. 2017) (citing *Finucane v. Interior Constr. Corp.*, 264 A.D.2d 618, 695 (1st Dep't 1999)).

In addressing the question of whether the state selected has a reasonable relationship to the agreement, courts will look at "the location of the following factors: the parties' negotiation of the agreement; performance under the agreement, including where the loan payments were received; the parties' places of incorporation; the parties' principal place of business; and the property that is the subject of the transaction." *Madden*, 237 F. Supp. 3d at 148. "A party may not avoid New York's usury laws . . . by nominally operating in another jurisdiction. *Id.* (citing *Culbert v. Rols Capital Co.*, 184 A.D.2d 612 (N.Y. App. Div. 1992)).

Here, the parties negotiated the agreement in New York; performance under the agreement occurred in Texas and New York; the loan payments were received by a bank in New

York; Defendant Cardinal is a Nevada corporation with a principal place of business in Texas; and Plaintiff is a Virginia corporation with a principal place of business in New York. Therefore, there are four states with at least some relationship with the Agreement. As such. "most of the factors do not appear to support a finding that a reasonable relationship exists between the parties, the transaction," and the Virginia forum. *Madden*, 237 F. Supp. 3d at 148. The only contact of this transaction with Virginia is that Plaintiff was incorporated there. By contrast, the state of New York has numerous contacts with this transaction in that the Agreement was negotiated in New York, payments were received by a bank in New York, and Plaintiff's principal place of business is in New York.

Plaintiff cites a report and recommendation which held that a party's place of incorporation, in addition to the choice of law provision, was sufficient to establish a reasonable relationship with a state. *See Power Up Lending Group, Ltd. v. Danco Painting, LLC*, 2016 WL 5362558, at *4 (E.D.N.Y. Aug. 10, 2016), *report and recommendation adopted* 2016 WL 5349784 (E.D.N.Y. Sept. 23, 2016). In that case, the plaintiff was moving for default judgment and the defendant had not appeared so "Defendants ha[d] not advocated for the application of a particular state's laws." *Id.* at *3. This was a material factor in that Court's decision to honor the choice of law provision. *See id.* Here, however, Defendant Cardinal has appeared and has forcefully advocated for application of New York law.

Virginia "has no substantial relationship to the parties and New York would seem to have a materially greater interest in the application of its law." *Am. Equities Group, Inc. v. Ahava Dairy Products Corp.*, 2004 WL 870260, at *8 (S.D.N.Y. Apr. 23, 2004). Therefore, "the rights and duties of the parties are governed by the law of New York, despite the agreement to the

contrary." *Id.* Accordingly, the Court finds that Virginia does not have a "reasonable relationship" to the Agreement, and New York law should apply.[3]

IV. *Plaintiff's Motion for Summary Judgment is Granted*

A. Plaintiff's Breach of Contract Claim

Under New York law, the elements of a breach of contract claim are: (1) the existence of an agreement between the parties, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 311–12 (S.D.N.Y. 2018).

As to the first element, the Parties agree that the Agreement and the attendant Security Agreement and Guaranty exist. (Def.'s R. 56.1 Stmt. ¶ 1–3.) There is, however, a legal dispute over whether the Agreement is a revenue-based factoring agreement or, as Defendant Cardinal contends, a short-term loan in disguise. (*Id.* ¶ 1.) As to the second element, there is no dispute that Plaintiff performed under the contract. (*Id.* ¶ 4.) However, Plaintiff contends that $128,000.00 was distributed, whereas Defendant Cardinal claims that only $124,200.00 was tendered to Defendant. (*Id.*) As to the third element, Defendant Cardinal concedes that it breached the Agreement by blocking the ACF payments and that it stopped making payments under the Agreement. (*Id.* ¶¶ 6–9.) There is a dispute as to the exact dates that Defendant failed to make payments in December 2015 and January 2016. (*Id.* ¶¶ 6–7.) Finally, as to the fourth element, Defendant concedes that it owes $144,710.90 under the Agreement, plus a default fee of $5,000.00 and an additional $2,500.00 bank default charge, for a total sum of $152,210.90. (*Id.*

---

[3] The Court need not consider whether Virginia law violates a fundamental policy of New York as the limitation on applying a choice of law provision is a conjunctive test and Plaintiff did not meet the first element. *See Finucane*, 264 A.D.2d at 695.

¶¶ 10–11.) However, Defendant asserts that the transaction is criminally usurious and void *ab initio*. (*Id.* ¶ 11.)

Based on the undisputed facts set forth above, the Court finds that Defendant Cardinal breached the Agreement. Therefore, the Court must consider whether Defendant Cardinal's affirmative defenses raised in its memorandum in opposition preclude an award of summary judgment.

B. New York Criminal Usury Law Does Not Apply

New York Gen. Oblig. § 5-521(3) provides that a corporation may interpose a defense of criminal usury pursuant to N.Y. Penal Law § 190.40. New York Penal Law § 190.40 provides in relevant that:

> A person is guilty of criminal usury in the second degree when . . . he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

Under New York law, the rudimentary element of usury is a loan or forbearance of money, so without a loan there can be no usury. *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017). "When determining whether a transaction constitutes a usurious loan it must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it." *Id.* at 281 (quoting *Abir v. Malky, Inc.*, 59 A.D. 3d 646, 649 (N.Y. App. Div. 2017)) (internal quotation marks omitted). "When a payment or enforcement rests on a contingency, the agreement is valid though it provides for a return in excess of the legal rate of interest." *Colonial Funding*, 252 F. Supp. 3d at 281 (quoting *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 950 N.Y.S.2d 723 (N.Y. Sup. Ct. 2012)) (internal quotation marks omitted).

In the case at bar, the Defendant avers that the Agreement is a loan, whereas Plaintiff argues that it is a merchant agreement that cannot be usurious. The New York Appellate Division, First Department has recently affirmed a New York Supreme Court decision that found that an agreement purchasing a percentage of future receivables was not a loan subject to § 190.40. *Champion v. Auto Sales, LLC v. Pearl Beta Funding, LLC*, 159 A.D. 3d 507 (N.Y. App. Div. 2018). Likewise, in *Colonial Funding*, the Southern District of New York found that an agreement for "receipt purchased amounts" was not a loan because payment was not absolute and was contingent upon the continued collection of receipts by the defendant from its customers. 252 F. Supp. 3d at 281. The New York State Supreme Court cases that Defendant cites in support of its contention that the Agreement is a loan all pre-date the *Champion* and *Colonial Funding* decisions or are distinguishable on the facts.

New York State Courts have established that there are three terms that Courts should look to when evaluating whether an agreement is a loan or a merchant agreement: (1) whether there is a reconciliation provision; (2) whether the agreement has an indefinite term; and (3) whether the plaintiff has any recourse should the merchant declare bankruptcy. *K9 Bytes, Inc. v. Arch Capital Funding*, 56 Misc. 3d 807, 817 (N.Y. Sup. Ct. 2017) (citing *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 WL 1065071 (N.Y. Sup. Ct. 2017); *see also Prof'l Merchant Advance Capital, LLC v. C Care Servs., LLC*, 2015 WL 4392081, at *4 (S.D.N.Y. July 15, 2015) (noting in dicta that the defendants' obligation to make a minimum weekly payment irrespective of the accounts receivable suggest that the agreement at issue was a loan).

Here, Defendant Cardinal concedes that the Agreement has "a reconciliation clause, an indefinite term clause, and the absence of a guarantee," which are signifiers that it is a merchant agreement rather than a loan. (*See* Mem. in Opp. at 11.) However, Defendant argues that there

are outstanding questions of fact regarding these clauses and whether they are "illusory." (*See id.*) In reviewing the Agreement at issue, it is evident that these clauses are not illusory. The reconciliation clause provides that reconciliation is automatic, mandatory, and that there is no discretion for Plaintiff. There is no minimum payment, so if Defendants' accounts receivables were $0, then Plaintiff would receive $0 (after the end of month reconciliation). While the Agreement requires Defendant Cardinal to provide bank statements in order for the clause to go into effect, this is within Defendants' control. *See Kelly*, 950 N.Y.S.2d at 723; *see also Rapid Capital Fin., LLC v. Natures Mkt. Corp.*, 57 Misc.3d 979, 982 (N.Y. Sup. Ct. 2017) (considering an identical requirement and coming to the same result). The only provision in the reconciliation clause that is within Plaintiff's "sole discretion" is a request for an adjustment for reasons other than a change in Defendant's monthly receipts, which does not fall within the parameters of a "reconciliation." Likewise, the term in the Agreement is indefinite because it is contingent upon a specified percentage (18%) of Plaintiff's receipts—every time Defendants' receipts change the amount of time it will take for Plaintiff to be reimbursed will change, and there is no fixed end date by which Plaintiff must be paid. Defendant Cardinal's contentions to the contrary demonstrate a misunderstanding of how the Agreement operates. Finally, Defendant Cardinal is correct that the security interest and guaranty that Plaintiff can enforce in the event Defendant declares bankruptcy could suggest that the Agreement is a loan rather than a merchant agreement. However, the "protection of plaintiff's ultimate ability to collect its full entitlement is insufficient, alone, to establish that this [Agreement] is, instead, actually a loan." *Rapid Capital Fin.*, 57 Misc.3d at 984.

Based on the foregoing analysis, the Court finds that the Agreement is not a loan and, accordingly, that criminal usury does not apply. As such, Defendant Cardinal's first affirmative defense has no merit.

C. The Transaction Is Not Void Ab Initio

Defendant Cardinal's second affirmative defense is that the transaction is void *ab initio* because it violates New York's criminal usury statute. This is a restatement of its first argument that the Agreement is usurious pursuant to Penal Law § 190.40. As the Court has already found that the Agreement is not a loan and that criminal usury does not apply, this argument has no merit. Accordingly, Defendant Cardinal's second affirmative defense likewise has no merit.

D. There Are No Triable Issues of Fact

Defendant Cardinal's final affirmative defense is that there are three outstanding questions of material fact: (1) whether the choice of law provision applies; (2) whether the Agreement is a merchant agreement or a loan; and (3) if the Agreement is a loan, whether the interest rate exceeds New York's usury limit. (Mem. in Opp. at 23.) The Court is unpersuaded by this defense as all of these matters are questions of law, not fact, and they have already been decided herein. Accordingly, Defendant Cardinal's third affirmative defense is inapplicable.

The Court notes, *sua sponte*, that the contested facts regarding the exact amount of money disbursed by Plaintiff to Defendants, and the exact dates of Defendant Cardinal's failure to remit payment are immaterial because the Parties agree that the Agreement was breached and that there is an outstanding debt of $152,210.90. (See Def.'s R. 56.1 Stmt. ¶¶ 9, 11.)

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment pursuant to Rule 56 against Defendant Cardinal is granted as to the breach of contract claim. Plaintiff provides no

discussion in its motion of its claims regarding breach of the Security Agreement and Guaranty, litigation expenses, or fraud so summary judgment has not been granted as to those claims. Given that these claims as well as the claims against Defendant Crawford remain, no judgment will be entered at this time.

**SO ORDERED.**

Dated: Central Islip, New York
April 3, 2019

/s/
Denis R. Hurley
United States District Judge