UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
POWER UP LENDING GROUP, LTD.,

                           Plaintiff,

 - against -

CARDINAL ENERGY GROUP, INC., and
TIMOTHY W. CRAWFORD,

                         Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:16-cv-1545 (DRH) (ST)

**APPEARANCES**

**NAIDICH WURMAN LLP**
Attorneys for Plaintiff
111 Great Neck Road – Suite 214
Great Neck, NY 11021
By:   Richard Naidich, Esq.
       Bernard Samuel Feldman, Esq.
       Robert P. Johnson, Esq.

**PATRICK McHUGH LAW LLC**
Attorneys for Defendant Timothy W. Crawford
303 South Broadway – Suite 234
Tarrytown, NY 10591
By:   Patrick J. McHugh, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

      Presently before the Court is Plaintiff Power Up Lending Group, Ltd.'s ("Power Up") Motion for Leave to Amend its Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 15 and Defendant Timothy W. Crawford's ("Crawford") Motion for Summary Judgment pursuant to Rule 56. Power Up's proposed Amended Complaint adds three causes of action for fraud to the initial Complaint, for a total of four such causes of action against Crawford. *See* Compl. [DE 1]; Am. Compl. ("AC") [DE 87].

Crawford moves for summary judgment on the fraud cause of action common to both complaints as well as the three additional ones should the Court permit Power Up to bring them.  For the reasons stated below, Power Up's motion to amend is granted in part and denied in part and Crawford's motion for summary judgment is denied.

## BACKGROUND

The following facts, taken from the parties' Local Rule 56.1 statements and the pleadings, are undisputed unless otherwise noted. (*See* Def. Crawford's Rule 56.1(a) Statement ("Crawford 56.1") [DE 91-1]; Power Up's Rule 56.1(a) Statement ("Pl. 56.1") [DE 92-1]).

### A.    Relevant Facts

At all relevant times, Defendant Cardinal Energy Group, Inc. ("Cardinal Energy") was a publicly-traded Texas oil-and-gas company with a principal place of business in Texas.[1]  Crawford, a citizen of Texas, served as its CEO.  (Crawford 56.1 ¶ 2).  In 2015, Crawford negotiated on behalf of Cardinal Energy two loan agreements with nonparty Seth Kramer, Managing Director of nonparty Vis Vires Group, Inc.[2] (Decl. of Seth Kramer ¶ 3 ("Kramer Decl.") [DE 92-2]).

---

[1]    Paragraph 9 of both complaints allege Cardinal Energy was "organized and existing under the laws of the State of Texas," (Compl. ¶ 9; AC ¶ 9; *see also* Am. Answer of Tim Crawford ¶ 9 [DE 61] (admitting the allegation)), but Cardinal Energy's November 12, 2015 Corporate Resolution reflects it is "organized under the laws of the State of Nevada," (Ex. E to McHugh Decl.; *see* Bylaws of Cardinal Energy Group, LLC § V.02, Ex. F to McHugh Decl.; Compl. ¶ 9, *SEC v. Crawford* et al., No. 2:19-cv-1022 (S.D. Ohio filed Mar. 19, 2019); *see also* Nevada Secretary of State Business Search, Ex. G to McHugh Decl.).

[2]    Power Up describes Kramer as "the Chief Officer" of Vis Vires.  (Pl. 56.1 ¶ 11).

Under both agreements, Vis Vires lent money to Cardinal Energy in exchange for promissory notes convertible into Cardinal Energy common stock at Vis Vires's discretion. (*Id.*). Through the first agreement, dated February 20, 2015, Cardinal Energy received $54,000.00. (*Id.* ¶¶ 4, 6). Through the second, dated May 1, 2015, Cardinal Energy received an additional $59,000.00. (*Id.*). Both required Cardinal Energy to maintain share reserves sufficient to cover Vis Vires's conversion rights, *i.e.*, to ensure that if Vis Vires desired to convert any outstanding debt principal into common stock, Cardinal Energy would have enough shares on hand to accommodate Vis Vires's exercise of its contractual right. (*Id.* ¶ 7). On September 4, 2015, VVG converted $15,120.00 of the debt principal into Cardinal Energy common stock. (*Id.* ¶ 6).

At some point thereafter, Cardinal Energy's share price decreased. The parties dispute who then approached whom about altering their arrangement. Crawford contends Vis Vires approached Cardinal Energy; Power Up contends Crawford approached Vis Vires. (Decl. of Timothy W. Crawford ¶ 6 ("Crawford Decl.") [DE 91-2]; Kramer Decl. ¶¶ 8–9). Nonetheless, Crawford and Kramer began to negotiate a "Revenue Based Factoring Agreement" and a "Security Agreement and Guaranty" (together, the "Factoring Agreement") involving another entity for which Kramer served as Managing Director: Plaintiff Power Up Lending Group, Ltd.[3] (Kramer Decl.

---

[3]  Crawford refers to Power Up and Vis Vires interchangeably as "Plaintiff" because he contends they are corporate affiliates lacking any meaningful distinction. Crawford Reply at 7 (arguing Power Up "was proposing to lend money to Cardinal [Energy] to pay *itself* (the corporate affiliate Vis Vires Group, Inc.), of which Mr. Kramer was Managing Director of both entities" (emphasis in original)).

¶ 10).  Power Up, a Virginia corporation with a principal place of business in New York, (Compl. ¶ 8), "engage[s] in the business of purchasing accounts receivable from small companies," such as Cardinal Energy, (Pl. Opp. at 1 [DE 92]).

Negotiations lasted several weeks.  (Crawford 56.1 ¶ 3; Crawford Decl. ¶ 3; Kramer Decl. ¶¶ 10–13).  In the course thereof, Power Up's underwriters performed due diligence into Cardinal Energy's ability to make daily payments from future receivables – in part by reviewing Cardinal Energy bank statements provided by Crawford.  (Crawford 56.1 ¶ 6).  Kramer "expressed concern that [Cardinal Energy's] financials indicated that it was losing money and [] questioned whether or not [Cardinal Energy] would be able to live up to its payment obligations."  (Kramer Decl. ¶¶ 10–13).  To assuage Kramer's concerns, "Crawford brought his auditor to [a] meeting and they assured" Kramer that Cardinal Energy "had sufficient cash flow to meet" these new obligations even though its "financials . . . reflected losses."  (*Id.*).  Relying on the bank statements, Crawford's assurances, and Kramer's prior business relationship with Crawford, Power Up entered into the Factoring Agreement with Cardinal Energy on November 12, 2015.  (Pl. 56.1 ¶ 6).  Crawford, in his capacity as CEO and pursuant to a resolution of the Cardinal Energy Board of Directors, signed the Factoring Agreement on Cardinal Energy's behalf and manually crossed-out its personal guaranty provision, initialing the deletion in the margin.  (*Id.* ¶¶ 3–4; Crawford 56.1 ¶ 2; Crawford Decl. ¶¶ 3, 5; *see* Corp. Resolution of Cardinal Energy, Ex. E to Decl. of Patrick J. McHugh ("McHugh Decl.") [DE 91-3]).  Among the papers signed was an express representation by Cardinal Energy that "the information and

documentation provided to Power Up including but not limited to . . . bank statements are true, accurate and complete."  (Ex. G at 89 of 142 to McHugh Decl.).

Pursuant to the Factoring Agreement, Power Up paid off Cardinal Energy's debt to Vis Vires in exchange for "daily payments from future [Cardinal Energy] receivables . . . to be automatically withdrawn from [Cardinal Energy's] bank account" over a thirteen-month period.  (Kramer Decl. ¶¶ 10, 12; *see* Factoring Agmt., Ex. D to McHugh Decl.).  Specifically, Power Up advanced $128,000.00 in exchange for $632.97 per day, to last approximately 272 business days.  (Crawford 56.1 ¶ 6; Kramer Decl. ¶ 14).  Cardinal Energy made approximately thirty payments before directing its bank not to remit the daily amounts to Power Up.  (Kramer Decl. ¶ 14).

## B.    Procedural Posture

Power Up commenced this action on March 30, 2016.  [DE 1].  On August 1, 2016, then-Magistrate Judge Gary R. Brown entered a Scheduling Order setting a September 12, 2016 deadline to move to amend the pleadings.  [DE 14].  Later amendments to the Scheduling Order did not alter this deadline.  (*See* [DE 57]; Order dated Aug. 5, 2020).

On March 13, 2017, Power Up requested a premotion conference for leave to move for summary judgment against Cardinal Energy, in which it would "seek to drop out the individual defendant [Crawford] to eliminate any triable issues of fact." [DE 21].  In its Opening Memorandum filed June 2, 2017, Power Up wrote:

> Finally, the action should be dismissed against Mr. Crawford but without prejudice as we seek to sever the claims against him not because of any lack of liability (and we believe he is liable) but because we recognize that the claim of individual liability may present triable issues

> of fact that would impede the award of Summary Judgment to which
> Plaintiff is entitled.

(Pl. Mem. in Supp. of Summ. J. Against Cardinal Energy at 9–10 [DE 22-11]).  On
December 15, 2017, counsel who had represented both Cardinal Energy and Crawford
moved to withdraw from the case, which was granted on January 17, 2018. ([DE 25];
*see* Order dated Jan. 11, 2018).  New counsel, representing solely Cardinal Energy,
had appeared on December 22, 2017 and immediately moved for leave to amend its
answer.  [DEs 26, 28].  Crawford failed to obtain new counsel – prompting Judge
Brown to direct Crawford to inform the Court whether he intended to retain new
counsel or proceed pro se.  (Order dated Jan. 17, 2018).  Crawford did not respond or
appear at a conference at which he was directed to appear.  (*See* Order dated Mar. 8,
2018; Minute Entry dated April 3, 2018).  Cardinal Energy, with leave, filed its
Amended Answer on April 6, 2018 and submitted opposition papers to the summary
judgment motion on June 14, 2018.  (*See* Minute Entry dated April 3, 2018; [DEs 35,
39]).

On March 26, 2019, while its summary judgment motion against Cardinal
Energy remained pending, Power Up informed the Court that it no longer wished to
discontinue the action against Crawford on account of allegations of wrongdoing
against him by the United States Securities and Exchange Commission ("SEC") in
*SEC v. Crawford* et al., No. 2:19-cv-1022 (S.D. Ohio filed Mar. 19, 2019) [DE 40].  On
April 3, 2019, this Court granted summary judgment in favor of Power Up against
Cardinal Energy and noted that Power Up withdrew its request to dismiss the action

against Crawford.  [DE 41].[4]  Though the Court characterized Power Up's request with respect to Crawford as a "stipulation of dismissal," (*see id.* at 4), no formal stipulation was ever filed.

On August 28, 2019, new counsel appeared on behalf of Crawford.  [DE 44]. Although he understood "the deadline for discovery . . . ha[d] passed," Crawford sought leave to amend his answer and to reopen discovery; his requests were granted on February 10, 2020.  [DEs 44, 51, 57].  Crawford filed his Amended Answer on February 28, 2020, [DE 61], and, seven-and-a-half months later, newly assigned Magistrate Judge Steven Tiscione held discovery was closed, (*see* Minute Entry for Feb. 10, 2020 Telephone Conf. [DE 57]; Scheduling Order dated Aug. 5, 2020; Minute Entry for Nov. 15, 2020 Settlement Conf. [DE 82]).

On December 9, 2020, Crawford requested leave to move for summary judgment against Power Up.  [DE 83].  In response, on December 15, 2020, Power Up requested leave to amend its complaint.  [DE 84].  This Court referred Power Up's request to Judge Tiscione, who directed Power Up to file an amended complaint "with the understanding that [Crawford] objects to the amendment and will raise such objections as part of the briefing on summary judgment."  [DE 86].  Power Up filed the Amended Complaint on January 12, 2021, [DE 87], and Crawford submitted his summary judgment motion papers on March 26, 2021, [DE 90].

---

[4]    The Memorandum and Order can be found at *Power Up Lending Group, Ltd. v. Cardinal Energy Group, Inc.*, 2019 WL 1473090 (E.D.N.Y. Apr. 3, 2019).

Power Up's proposed Amended Complaint re-asserts the fourth count in the initial Complaint, a fraud cause of action against Crawford stemming from his alleged provision of false Cardinal Energy income and banking records. (*See* AC ¶¶ 30–37; Compl. ¶¶ 30–37). It then "add[s] three additional causes of action [against Crawford,] each sounding in fraud and each based upon different circumstances and allegations." (Pl. Opp. at 7 [DE 92]; *see* AC ¶¶ 38–57). They are its Fifth through Seventh causes of action.[5] (Pl. Opp. at 17). The Fifth arises from Crawford "verifying and representing," in his corporate and individual capacities, that the information in the documents provided were "true and correct." (*Id.* ¶¶ 38–46). The Sixth traces to Crawford's "direct representations and false statements" concerning "the success of the oil business operated by" Cardinal Energy," *i.e.*, why, despite Cardinal Energy's "financials indicat[ing] that it was losing money," it could meet its Factoring Agreement obligations. (*Id.* ¶¶ 47–52). The Seventh cause of action alleges Crawford sought the funds "for personal expenses that he charged to [Cardinal Energy] for his own personal benefit," as reflected by the "bank account statements provided by Crawford." (Pl. Opp. at 16–17; AC ¶¶ 53–57).

Crawford moves for summary judgment on the Fourth cause of action, which appears in both initial Complaint and Amended Complaint, and opposes the motion to amend in its entirety. (*See* AC ¶¶ 30–37). Should the Court permit Power Up to

---

[5]     The parties agree that Power Up's First through Third causes of action, in the initial Complaint and re-asserted in the Amended Complaint, are not brought against Crawford. Crawford Mem. at 24–25; Pl. Opp. at 14.

file the Amended Complaint over his objection, Crawford further moves for summary

judgment on the three additional fraud causes of action.

## DISCUSSION

This Memorandum and Order proceeds by addressing (I) the merits of Power

Up's motion to amend and then (II) the merits of Crawford's motion for summary

judgment.

## I.      Power Up's Motion to Amend

Power Up's motion to amend raises three issues: (A) whether Rule 15 or Rule

16 supplies the legal standard applicable to the motion to amend; (B) whether the

proposed three new fraud causes of action are distinct from the fraud cause of action

brought in the initial Complaint; and (C) whether to grant Power Up's motion.

### A.     Legal Standard

The parties dispute whether Power Up's motion should be analyzed under Rule

15 or Rule 16.  Power Up argues its motion "should be analyzed" with Rule 15's "freely

give leave when justice so requires" standard in mind.  Pl. Opp. at 9.  Crawford

contends the Scheduling Order's deadline to amend pleading having passed, the Rule

15 standard "migrates" to the Rule 16 "good cause" standard.  Crawford Mem. at 11

[DE 91].[6]

---

[6]      On September 27, 2019, *i.e.*, three years after the September 12, 2016 deadline
to move to amend the pleadings, Crawford sought leave to amend his Answer.  Ltr.
dated Sept. 27, 2019 [DE 51].  He did not contend that Rule 16's "good cause" applied.
Instead, he argued "settled case law makes clear that pleadings may (indeed, should)
be amended at any time to conform to the facts and evidence as such facts and
evidence exist before the Court," and for that reason, "justice so require[d]" granting
him leave to amend.  *Id.* (citing no case law).  Crawford filed his Amended Answer on
February 28, 2020.  [DE 61].

"Where . . . a scheduling order governs amendments to the complaint, and a plaintiff wishes to amend after the scheduling deadline has passed, the plaintiff must satisfy *both* [Rules] 15 and 16 to be permitted to amend." *Pasternack v. Shrader*, 863 F.3d 163, 174 & n.10 (2d Cir. 2017) (emphasis added) (ellipses in original) (internal quotation marks omitted).

Rule 15 instructs district courts to "freely give leave when justice so requires." *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Prejudice results from an amendment requiring "the opponent to expend significant additional resources to conduct discovery and prepare for trial" or an amendment causing significant delay to the resolution of the dispute. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (internal quotation marks omitted).

Where, as here, a scheduling order's deadline to amend pleadings has passed, Rule 16 requires a showing of "good cause" to amend, which "turns on the 'diligence of the moving party.'" *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2003)). Even so, "a court applying Rule 16 has discretion to examine the Rule 15(a) factors" – prejudice,

---

Power Up seeks to amend for the same reason: to conform its pleading to the evidence obtained in discovery, *e.g.*, that cited in opposition to Crawford's summary judgment motion. *Compare* Kramer Decl. ¶ 10, *with* AC ¶ 31. Power Up, however, fails to argue Crawford is estopped from asserting that Rule 16 governs the instant motion to amend.

futility, bad faith, and undue delay. *In re Int. Rate Swaps Antitrust Litig.*, 2019 WL 1147149, at *4–5 (S.D.N.Y. Mar. 13, 2019) (internal quotation marks omitted) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) and *McCarthy*, 482 F.3d at 200).

### B. Both the Initial Complaint and the Amended Complaint Assert One Fraud Cause of Action

Power Up unconvincingly argues that Amended Complaint "add[s] three additional causes of action each sounding in fraud and each based upon different circumstances and allegations." Pl. Opp. at 7. The Court shares Crawford's view, namely, that the three new fraud counts "appear[] to be an extension of Count Four," the fraud count common to both the initial and amended complaints. *See* Crawford Mem. at 26–28. Indeed, elsewhere in it its briefing, Power Up concedes "the amendments add additional language and facts concerning Crawford's fraudulent conduct." Pl. Opp. at 12. In that respect, they merely enhance the fraud cause of action already pled; the Amended Complaint adds not three new causes of action, but three additional ways in which Crawford allegedly defrauded Power Up. If proven, Power Up

> suffered but one actionable wrong, and [is] entitled to but one recovery, whether [its] injury [is] due to one or the other of several distinct acts of alleged [fraud], or to a combination of some or all of them. . . .
>
> A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of [fraud] alleged as causing the same injury does not result in multiplying the causes of action. "The facts are merely

> the means, and not the end.  They do not constitute the cause of action,
> but they show its existence by making the wrong appear."

*Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 321 (1927) (quoting *Chobanian v.*

*Washburn Wire Co.*, 33 R.I. 289, 302 (R.I. 1911)); *Burns Bros. v. Cent. R.R. of New*

*Jersey*, 202 F.2d 910, 911–12 (2d Cir. 1953) (L. Hand, J.) (quoting same).  The Second

Circuit has similarly observed:

> The fact that in pleading his claim the plaintiff has charged the
> defendants with accomplishing the harm by acts which viewed
> independently might themselves be deemed torts does not necessarily
> mean that he has alleged several causes of action which must be stated
> in separate counts.

*Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189–90 (2d Cir. 1943)

(discussing *Travelers' Ins. Co. v. Chiarello Stevedoring Co.*, 236 A.D. 468, 469 (N.Y.

App. Div., 1st Dep't 1932), which held that a plaintiff could plead fraud as a single

cause of action where a "series of acts" were orchestrated "in pursuance of a common

scheme").

Instead of analyzing each separately, a court "may overlook such inartistic

pleading in the interest of avoiding unnecessary collateral and time-consuming

exercises" – that is, a court may analyze several counts as one.  *Merrin Jewelry Co. v.*

*St. Paul Fire & Marine Ins. Co.*, 301 F. Supp. 479, 481 (S.D.N.Y. 1969).  The *Merrin*

*Jewelry* Court, for example, treated plaintiff's first and second causes of action as one

claim despite plaintiff "split[ting] a single claim" between the two.  *Id.*  There was

"[n]o doubt" that the two causes of action would be "treated appropriately and as a

single claim at trial," that the opposing party "suffer[ed] no discernible prejudice,"

and that the allegations were "sufficiently particular to give notice of the matter in controversy." *Id.*

Despite being pled in three separate fraud counts, the additional facts further detail the manner in which Crawford used the banking statements to defraud Power Up during the Factoring Agreement negotiations. *E.g.*, AC ¶¶ 30–37 (misrepresenting "financial information, asset information, alleged receipts of income and banking records" to suggest Cardinal Energy could meet its Factoring Agreement obligations); *id.* ¶¶ 38–46 (warranty misrepresented that all "information contained in such banking records[] and all other information submitted by Cardinal" Energy was true and correct); *id.* ¶¶ 47–52 (statements demonstrated "the success of the oil business" despite paper losses); *id.* ¶¶ 53–57 (statements misrepresented the purpose of loan). Further, the four purported causes of action allegedly caused the same damages: $150,560.90. AC ¶¶ 36, 46, 52, 57; *see* AC Wherefore Clauses ¶¶ (iv)–(vii).

As the initial Complaint already lodged a claim against Crawford for his fraudulent conduct and prayed for the same damages, "it would be superfluous to sanction the amendment" in the form of three more causes of action targeting the same wrong. *Greenfield v. Kanwit*, 87 F.R.D. 129, 132 (S.D.N.Y. 1980); *see Rouviere v. DePuy Orthopaedics, Inc.*, 2020 WL 3865614, at *5 (S.D.N.Y. July 7, 2020) (amendment adding negligent failure to warn claims was futile where "in the[] existing negligence causes of action . . . [p]laintiffs already have pled that [d]efendants were negligent in failing to warn"). Power Up's motion to amend is denied insofar as it purports to bring three "new" causes of action: Counts 5, 6, 7.

Instead, the Court will construe all the new factual allegations to support the existing fraud cause of action.

### C.      Propriety of Power Up's Motion to Amend

Power Up's amended factual allegations concerning Crawford's fraudulent conduct align its pleading with the evidence uncovered in discovery.

As to Rule 16's "good cause" standard, Power Up contends Crawford's "delay and obfuscation" prevented it from moving to amend earlier.  Pl. Opp. at 8–11.  For example, Power Up states, Crawford and his counsel allegedly "made it virtually impossible to depose Crawford or to obtain discovery in order to amend the [Complaint] in the first instance," *i.e.*, before the deadline to amend passed.  *Id.* Within two months of Crawford's deposition on October 20, 2020, and one month of Judge Tiscione's November 15, 2020 notation that discovery had closed, Power Up requested leave to amend.  *See* Ltr. dated Dec. 9, 2020.  It is clear Power Up was diligent—and thus has good cause under Rule 16—in seeking to amend notwithstanding the Scheduling Order deadline.

As to the Rule 15 inquiry, "[c]ourts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery." *In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012); *see, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) (permitting an amended complaint whose proposed allegations were "based on evidence" obtained in discovery, even though the deadline to amend pleadings had passed).  Here, as was true in *American Electric Power Co.*

*v. Westinghouse Electric Corp.*, "there is little prejudice to the defendant since the factual showing necessary to support [Power Up's] claims of fraud will arise out of the same transactions and occurrences which are already the subject matter of this lawsuit." 418 F. Supp. 435, 443 (S.D.N.Y. 1976).  As noted, the new allegations clearly generate from a common factual nucleus as those already pleaded: misrepresentations concerning Cardinal Energy's financial health derived from the documents Crawford provided.  Further, by premising its amended allegations on evidence obtained in discovery, there is no need to re-open discovery – diminishing any alleged prejudice to Crawford.  *See Am. Elec. Power Co.*, 418 F. Supp. at 444.

Accordingly, pursuant to both Rule 15 and Rule 16, Power Up's motion to amend is granted to the extent it adds factual allegations amplifying its fraud cause of action.

## II.   Crawford's Motion for Summary Judgment

The summary judgment analysis proceeds by addressing (A) the legal standard applicable to Crawford's motion for summary judgment, (B) the choice of law over the substantive issues, (C) Crawford's personal liability, and (D) whether genuine issues of material fact exist.

### A.   Legal Standard on a Motion for Summary Judgment

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS*

*Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.     Choice of Law

The Court must determine the substantive law governing Power Up's fraud claims. Though Crawford admits that the Factoring Agreement provides for the application of Virginia law, he briefs the merits of his fraud claim under New York law and contends "there [is] no material difference" between the two states'

"standard[s] for pleading fraud."[7]  Crawford Mem. at 21; *see* Factoring Agmt. § 4.5. Power Up states that the Factoring Agreement "provides for the application of Virginia law to any disputes."  Pl. Opp. at 2.

Subject-matter jurisdiction over this action derives from the parties' diversity of citizenship and, accordingly, the choice-of-law rules of the forum state, New York, apply.  *AEI Life LLC v. Lincoln Benefit Co.*, 892 F.3d 126, 132 (2d Cir. 2018).  The Factoring Agreement is inapposite to Power Up's fraud cause of action: "Under New York law, a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract."  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (emphases in original); *see AEI Life*, 892 F.3d at 129; *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract . . . .").

"In New York, 'the relevant analytical approach to choice of law in tort actions' is the 'interest analysis.'  That is, 'the law of the jurisdiction having the greatest interest in the litigation will be applied.'"  *Lazard Freres & Co. v. Protective Life Ins.*

---

[7]     Crawford mentions, without concomitant argument, Rule 9(b)'s heightened pleading standard for fraud with respect to the new allegations.  Crawford Mem. at 26–29.  Similarly, Power Up fails to address the issue directly.  Accordingly, the Court will not address it.  *See also Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 450 (S.D.N.Y. 2006) ("Rule 9(b) is typically invoked on motions to dismiss.  It is not the appropriate device to vindicate [defendant's] rights at [the summary judgment] stage of the proceedings.  Among other things, invocation of Rule 9(b) would work severe hardship on [plaintiff] and prevent it from utilizing evidence obtained in discovery as part of its claims.").

*Co.*, 108 F.3d 1531, 1539 n.5 (2d Cir. 1997) (quoting *Schultz v. Boy Scouts*, 65 N.Y.2d 189 (1985)).  New York recognizes the jurisdiction "where the injury was inflicted, rather than where the fraudulent act originated," has the greatest interest in a fraud claim.  *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013).  Under New York law, "loss from fraud" is "suffered where its economic impact is felt, normally, the plaintiff's residence."  *Intellivision v. Microsoft Corp.*, 2008 WL 3884382, at *5 (S.D.N.Y. Aug. 20, 2008) (internal quotation marks omitted) (quoting *Sack v. V.T. Low*, 478 F.2d 360, 366 (2d Cir. 1973)).  In the case of a plaintiff corporation—like Power Up—"the place of injury is the principal place of business or location of the business, as opposed to the place of incorporation or organization."  *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, 2003 WL 22118977, at *17 (S.D.N.Y. Sept. 11, 2003) (quoting *Pinnacle Oil Co. v. Triumph Okla., L.P.*, 1997 WL 362224, at *1 (S.D.N.Y. Jun. 27, 1997)); *e.g.*, *Oliver Wyman, Inc. v. Eielson*, 2016 WL 5339549, at *4 (S.D.N.Y. Sept. 22, 2016) (Sullivan, J.) ("[T]he relevant inquiry is where Plaintiff suffered the 'most severe business injury,' which was in its principal place of business, New York.").

Power Up's principal place of business is in New York.  Compl. ¶ 8.  Power Up suffered the loss in New York; New York has the greatest interest; and New York law governs Power Up's fraud claim.

## C.   Personal Liability

Crawford contends Power Up cannot bring a claim against him personally because he negotiated and signed the Factoring Agreement on Cardinal Energy's

behalf – viz. solely in his capacity as CEO of Cardinal Energy.  Crawford Mem. at 25, 28–29.  In support, Crawford points to the crossed-out personal guaranty provision in the Factoring Agreement, which also includes Crawford's initials in the margin. Pl. 56.1 ¶ 2 (citing Factoring Agmt. at 89 of 142).  His corporate capacity, Crawford contends, requires Power Up to pierce the corporate veil in order to hold him personally liable.  Crawford Mem. at 25, Crawford Reply at 9 [DE 94].

Crawford's argument "blurs the distinction between claims for breach of [contract] and claims for fraud."  *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 156–57 (N.Y. 2010).  Power Up's claim against Crawford does not sound in contract; it sounds in fraud, a tort.  "Under New York law, a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable."  *Bano v. Union Carbide Corp.,* 273 F.3d 120, 133 (2d Cir. 2001) (internal quotation marks omitted); *Pludeman v. N. Leasing Sys., Inc.*, 10 N.Y.3d 486, 491 (N.Y. 2008) ("[C]orporate officers and directors may be held individually liable if they participated in or had knowledge of [a] fraud, even if they did not stand to gain personally.").

Veil piercing therefore does not come into play.  *See* Crawford Reply at 9. "[W]here a plaintiff asserts tort claims such as for fraud or fraudulent misrepresentation, there is *no need to pierce the corporate veil* in order to hold corporate officers or employees individually liable for their own acts of fraud." *Sun Prod. Corp. v. Bruch*, 2011 WL 5120307 (S.D.N.Y. Oct. 28, 2011) (emphasis in original) (internal quotation marks omitted), *aff'd*, 507 Fed. App'x 46 (2d Cir. 2013);

*see In re A.N. Frieda Diamonds, Inc.*, 2021 WL 4478738, at \*11 (S.D.N.Y. Sept. 30, 2021) (citing cases).

Evidence in the record suggests that Crawford fraudulently induced Power Up to enter the Factoring Agreement by misrepresenting Cardinal Energy's financial viability through the banking statements. *E.g.*, Kramer Decl. ¶¶ 10–14; Tr. of Dep. of Seth Kramer at 28:10–30:10 ("Kramer Tr."), Ex. A [DE 93-1] to Decl. of Richard S. Naidich ("Naidich Decl.") [DE 93]. Succinctly, evidence suggests Crawford personally participated in the fraud. Accordingly, Power Up can assert its fraud claim against Crawford in his personal capacity, notwithstanding his corporate capacity during the Factoring Agreement negotiations and the deleted personal guaranty provision.

### D.    Fraud

To prove fraud under New York law, Power Up must show: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).

Crawford, the summary judgment movant, fails to carry his burden of demonstrating the absence of a genuine issue of material fact. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Celotex Corp*, 477 U.S. at 323). There is an issue of material fact concerning the fourth element:

reasonable reliance.[8] Indeed, "[t]he question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive." *Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). "Reasonable reliance is [] a question normally reserved for the finder of fact and not usually amenable to summary judgment." *De Sole v. Knoedler Gallery, LLC*, 139 F. Supp. 3d 618, 643 (S.D.N.Y. 2015) (internal quotation marks omitted).

### 1. Reasonable Reliance Under New York Law

Reasonable reliance "entails a duty to investigate the legitimacy of an investment opportunity where plaintiff was placed on guard or practically faced with the facts." *Crigger*, 443 F.3d at 234 (internal quotation marks omitted). A plaintiff with "the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation . . . must make use of those means." *Schumaker v. Mather*, 133 N.Y. 590, 596 (N.Y. 1892); *Schlaifer Nance & Co.*, 119 F.3d at 98 (same). His or her means therefore dictate the rigor demanded of an investigation: "the greater the sophistication of the investor, the more inquiry that is required." *Crigger*, 443 F.3d at 235. Should a sophisticated plaintiff engage in a major transaction without "tak[ing] advantage" of his or her "access to critical information," "New York courts are particularly disinclined to entertain claims of

---

[8]    The Court exercises its discretion not to consider Crawford's argument concerning proximate cause, for the issue is raised for the first time in Crawford's Reply brief. Crawford Reply at 8–9; *see Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (observing that district courts have the discretion not to consider arguments first raised in summary judgment reply papers).

justifiable reliance." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984).

In lieu of this diligence, a plaintiff may "protect itself against deception" by "obtain[ing] representations and warranties to the effect that nothing in the [information provided is] materially misleading." *DDJ Mgmt., LLC*, 15 N.Y.3d at 156. Doing so "will often . . . justif[y]" the plaintiff's choice to "accept[] that representation rather than mak[e] its own inquiry." *Id.* at 154; *e.g.*, *Dillon v. Peak Env't, LLC*, 187 A.D.3d 1517, 1517 (N.Y. App. Div., 2d Dep't 2020); *Basis Yield Alpha Fund Master v. Stanley*, 136 A.D.3d 136, 142 (N.Y. App. Div., 1st Dep't 2015) ("[A] buyer or lender may protect itself by obtaining a contractual warranty of the representation relied upon."). Sophisticated plaintiffs—like the *DDJ Mgmt., LLC* plaintiffs (lenders of $40 million) and JP Morgan Chase Bank—have survived a defendant's summary judgment motion by, *inter alia*, pointing to such warranties. 15 N.Y.3d at 154–55; *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 409 (S.D.N.Y. 2004) (Lynch, J.). As Second Circuit Judge Learned Hand put it: "A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself." *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946).

But reliance on a warranty is not *per se* reasonable. A warranty will not save a plaintiff's fraud claim if it relied on representations known to be false or relied in a matter "so utterly unreasonable, foolish or knowingly blind as to compel the

conclusion that whatever injury it suffered was its own responsibility." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 182 (2d Cir. 2007). Simply stated, "patent foolishness is not excused." *Banque Franco-Hellenique de Com. Int'l et Mar., S.A. v. Christophides*, 106 F.3d 22, 26–27 (2d Cir. 1997) (holding reliance on "assurances of legality in the loan agreements" unreasonable where party testified that "he had heard about the bribes . . . two months before" obtaining the loan); *Sawabeh Info. Servs. Co. v. Brody*, 2014 WL 46479, at *14 (S.D.N.Y. Jan. 6, 2014) ("SISCOM could not justifiably rely on Shapp's warranty" that reports were accurate because "SISCOM understood that" the reports did not present "a complete picture"), *aff'd in relevant part sub nom. Sawabeh Info. Servs. Co. v. Eagle*, 598 Fed. App'x 794 (2d Cir. 2015).

Ultimately, whether reliance is reasonable depends on "the entire context of the transaction," its complexity and magnitude, the information available at the time of the operative decision, the sophistication of the parties, and the relationship between them. *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003); *JP Morgan Chase Bank*, 350 F. Supp. 2d at 406. As none of the factors is dispositive, "reasonable reliance is often a question of fact for the jury rather than a question of law for the court." *STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011) (internal quotation marks omitted)).

### 2. Power Up's Reliance Reflects a Genuine Question of Material Fact

Power Up has demonstrated the existence of a genuine question of material fact on the issue of reasonable reliance. A reasonable jury viewing the entire context of the transaction could find Power Up reasonably relied on the alleged misrepresentations: the banking statements, Crawford's signed warranty on behalf of Cardinal Energy that such statements were "true, accurate and complete," and Crawford and his auditor's representations as to why Cardinal Energy's paper losses did not reflect the success of its oil-and-gas business. *See* Ex. G at 89 of 142 to McHugh Decl.; Kramer Decl. at ¶¶ 10–11; Kramer Tr. at 29:12–30:10 (oil-and-gas financial statements are "a game with the numbers"); Tr. of Dep. of Tim Crawford at 49:19–50:3 ("Crawford Tr."), Ex. B [DE 93-2] to Naidich Decl.

However, viewing the evidence in a light favorable to Power Up—the nonmovant on the summary judgment motion—one of the banking statements is "for an entity other than" Cardinal Energy. Pl. Opp. at 15. The outlier statement is for "CEGX of Texas LLC" with an account number ending in -697; the rest are for "Cardinal Energy Group, Inc." with an account number ending in -120. *Compare* Ex. G at 79 of 142 to McHugh Decl., *with id.* at 83 of 142. Crawford fails to address the relationship, if any, of these two entities. Reasonable reliance could stem from evidence supporting an inference that the two are related. They shared the same mailing address. Ex. G at 73, 79 of 142 to McHugh Decl. Cardinal Energy's principal

place of business was in Texas.  Compl. ¶ 9.  And it traded under the stock ticker symbol CEGX.[9]

Crawford providing such banking statements to Power Up would give the impression that Cardinal Energy's finances were healthier than they were in fact.  Pl. Opp. at 16 ("[T]his bank statement . . . was not the property or account of [Cardinal Energy] but . . . ma[de] it appear that Cardinal Energy had additional income sufficient to pay" its obligations under the Factoring Agreement).  This impression is all-the-more justified in light of the Factoring Agreement's warranty as to the truth, accuracy and completeness of the bank statements.  *See* Ex. G at 89 of 142 to McHugh Decl.  These inflated financials are at the core of Power Up's fraud theory.  *E.g.*, Compl. ¶¶ 31–34.

Crawford contends Power Up's Rule 30(b)(6) corporate deponent "admitted that the due diligence materials (*i.e.*, banking records) were accurate."  Crawford Reply at 9.  The deponent testified:

> Q:   And there are a number of bank statements that
>       were provided?
>
> A:   Correct.

---

[9]     The Court takes judicial notice of the stock ticker symbol, which is not subject to reasonable dispute.  *LG Cap. Funding, LLC v. One World Holding, Inc.*, 2018 WL 3135848, at *9 & n.3 (E.D.N.Y. June 27, 2018) (taking judicial notice of a company's ticker symbol); *King World Prods., Inc. v. Fin. News Network, Inc.*, 660 F. Supp. 1381, 1387 (S.D.N.Y. 1987) ("[J]udicial notice may be taken of the fact that as of the time of trial, FNN's stock is listed on NASDAQ."); *see United States v. McGlothlin*, 38 Fed. App'x 713, 714 (3d Cir. 2002); *Horattas v. Citigroup Fin. Markets Inc.*, 532 F. Supp. 2d 891, 898–99 (W.D. Mich. 2007); *see also* Cardinal Energy Group, Inc., Annual Report (Form 10-K) (June 24, 2019) ("Our common stock . . . is traded under the symbol 'CEGX'."), https://www.sec.gov/Archives/edgar/data/0001408351/0001493152 19009635/form10-k.htm.

> Q.   Mr. Kramer, do you have any reason to believe that
> the bank statements provided to you in connection
> with the November 12 [F]actoring [A]greement are
> inaccurate in any way?
>
> A.   Well, I can't make that determination at this point.

Kramer Tr. at 12:1–19; *see* Crawford Mem. at 18–19, 22; Crawford Reply at 9. Read in a non-movant friendly light, however, the deponent's testimony is not interchangeable with, "The documents are legitimate and without misrepresentation."

The evidence addressing the oil-and-gas accounting principles animating Cardinal Energy's banking statement—despite lacking expert testimony or insight into how it is performed—likewise supports finding reasonable reliance a genuine issue of material fact. During negotiations, Power Up expressly raised a concern about Cardinal Energy's "financials indicat[ing] it was losing money." Kramer Decl. ¶¶ 10–11. Crawford and his unnamed auditor reassured Power Up that Cardinal Energy, like other oil-and-gas companies, still had positive "cash flow" despite the "paper losses." *Id.*; Crawford Tr. at 49:19–50:21. Indeed, Crawford, at his deposition, noted that "there is a lot more to look at than just looking at some numbers on a page," like "reserve reports and other things that aren't necessarily in a financial statement." Crawford Tr. at 49:19–50:21. Power Up's Rule 30(b)(6) declarant testified that Crawford "mentioned" the oil-and-gas business "is a game with numbers" and that, "on multiple occasions," Crawford "gave him every indication that business was strong, that business is viable." Kramer Tr. at 29:12–30:10. Boiled down, the evidence suggests that Cardinal Energy's financial statements do not give

a complete picture into Cardinal Energy's viability, diverting Power Up away from inspecting them too closely. *See id.* at 28:10–30:5. A reasonable jury could find Power Up reasonably relied on these representations.

Attempting to demonstrate the absence of a material fact, Crawford's argues the Factoring Agreement's merger clause precludes a fraud claim based on representations made during negotiations. Crawford Mem. at 21. The merger clause states the Factoring Agreement

> embod[ies] the entire agreement between [Cardinal Energy] and Power Up and supersede[s] all prior agreements and understandings relating to the subject matter hereof.

Factoring Agmt. § 4.8. But New York law does not interpret general merger clauses to bar fraud claims unless they "contain[] a disclaimer with respect to the specific representation or a waiver of any challenges to the validity of the contract itself." *Four Finger Art Factory, Inc. v. Dinicola*, 2001 WL 21248, at \*4 (S.D.N.Y. Jan. 9, 2001) (internal citations omitted) (citing, *inter alia*, *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310 (2d Cir. 1993) and *Dannan v. Realty Corp. v. Harris*, 5 N.Y.2d 317, 320–21 (N.Y. 1959)). The merger clause here is general and has no specific disclaimers. The clause at bar mirrors that in *Chase v. Columbia Nat'l Corp.*, 832 F. Supp. 654 (S.D.N.Y. 1993). The *Chase* Court dubbed the clause "contractual boilerplate" incapable of being "stretched into an acknowledgement that" an investor did not rely "on any representations made by [the investee company] concerning [its] financial condition." *Id.* at 662. This Court agrees.

At bottom, reasonable reliance here is a question better left for the factfinder.

**CONCLUSION**

For the reasons discussed above, Power Up's motion to amend is granted in part and denied in part.  It is granted to the extent that it adds more facts in support of its existing single fraud count; it is denied to the extent that it adds three more fraud causes of action.  Crawford's motion for summary judgment is denied.

**SO ORDERED.**

Dated: Central Islip, New York
      February 11, 2022

s/ Denis R. Hurley

Denis R. Hurley
United States District Judge